381 P.2d 215

**The STATE of Arizona, Appellee,**

v.

**Albert Edward KELLINGTON, Appellant.**

No. 1226.

Supreme Court of Arizona.

In Division.

May 8, 1963.

Peterson, Estrada & Matz, Phoenix, for appellant.

Robert W. Pickrell, Atty. Gen., Ross Anderson, Asst. Atty. Gen., Phoenix, for appellee.

LOCKWOOD, Justice.

This is an appeal from a conviction of a charge of receiving the earnings of a prostitute.[1] The appeal is based upon admitting in evidence certain statements alleged to have been made by the defendant and the denial of a motion for mistrial. The state's case consisted of the testimony of five police officers. The defendant did not present any evidence and did not take the witness stand.

Defendant complains that the state's witnesses testified regarding conversations with the defendant wherein the latter (1) confessed or admitted prior conviction of a felony, and (2) confessed or made admissions against interest regarding the charge against him. He claims that such testimony was improper because (1) there was no showing that the purported confessions or admissions were voluntarily given, and (2) because a prior conviction of an unrelated felony may only be used as impeachment of a witness, and as the defendant did not testify, he could not be thus impeached.

The state contends that as defendant's counsel did not object at the time the testimony complained of was given, or move to strike with an admonition to the jury to disregard it, defendant thereby waived any possible error inherent in it.

The testimony referred to was as follows. Officer Roth, on direct examination, testified to a conversation he had with the defendant following his arrest:

"Q. And what further conversation?

"A. I asked him if he had ever been in trouble with the police before, and he answered an affirmative answer. He told me that he was convicted of burglary, I believe in Minnesota.

\*    \*    \*    \*    \*    \*

"Q. And as far as Mr. Kellington, the defendant, was concerned, do you know what happened to him, if anything?

"A. We booked him for receiving the earnings of a prostitute and ex-convict failing to register."

Cross-examination of another arresting officer, Gardiner, elicited the following:

"Q. Now, I want you to think about some other conversation that took place on your way down to the station after you, as you say, apprehended the defendant, out there at 32nd Street and Van Buren. I want you to think real deeply. You had another afterthought just a while ago, and I want you to think about any other conversation. Now, would you just pause and think about anything else?

"A. We had basic conversation, which we have as a rule,—

1. A.R.S. § 13–584.

"Q. Was that the conversation you usually have when you arrest somebody?

"A. Yes, sir, in reference to him—

"Q. Do you usually, when you arrest somebody, tell him—

"MR. FENDERSON: Object, argumentative.

"THE COURT: I suggest counsel let the witness answer, though, without cutting in.

"MR. WHITNEY: Q. Very well. Go ahead. What else would you answer?

"A. We just asked questions about his background in the past, had he ever been in a penitentiary, was he an ex-convict, to which he replied yes, he was, and had been."

We have consistently held that the accused's record of conviction of a prior felony is only admissible for impeachment purposes after he takes the stand, and then it is limited in scope. State v. Hunt, 91 Ariz. 145, 370 P.2d 640. To permit such testimony under the circumstances here, where the defendant did not take the witness stand was highly prejudicial. Both witness-

es were police officers testifying for the state, and should have known, or been admonished by the prosecutor, that a mention of prior conviction under such circumstances was highly improper. Had counsel for defendant made an objection in the presence of the jury, and had the trial judge admonished the jury to strike such testimony from their minds, it would have served no real purpose. The damage had been done, for the effect of such testimony, having no relation to the crime charged, was to create in the minds of the jury an impression that the defendant's character was bad, and no admonition by the court could expunge this prejudicial attribute.[2] Defendant's counsel brought this matter to the attention of the trial court in his request for a mistrial. He pointed out that certain testimony, though stricken by the court was "like the bell that cannot be unrung or the whistle that cannot be unblown." This was sufficient to advise the court the error was not waived.

During the course of his narrative testimony on direct examination Officer Roth also testified:

"A. * * * Then I asked him if he had been doing * * * what I mean by, 'Doing,' had be been taking these

---

**2.** Cf. State v. Byrd, 62 Ariz. 24, 152 P. 2d 669, wherein question concerning previous supposed misconduct of the defendant was permitted, which raised an inference that he was a bad man, although the witness was not allowed to answer the question. Held that such inference created by the question was highly prejudicial, and court's admonition to jury to strike question from their memory was not sufficient to erase the prejudicial error.

girls to different locations for prostitution and receiving money from them. At that time he answered yes, he had been."

Defendant moved to strike on the ground the statements were offered as a confession and there was no foundation that it was voluntarily given. The court denied the motion. Thereafter Officer Gardiner testified:

"Q. What conversation did you have with the defendant?

"A. Enroute to the station I spoke to the defendant. I asked him if he had been putting the girls out to work for purposes of prostitution and had been receiving any of their earnings from this, to which he replied yes, he had.

"Q. Did you refer to any persons in particular, as to the blonde, Sharon Marlin?

"A. I mentioned only the blonde at that time. I didn't know the subject's name. I just mentioned it by blonde, by describing the girl that I had seen get out of the automobile.

"Q. What was his answer again?

"A. He replied yes, that he had been, and I asked him then, 'For about approximately what period of time?'

"He to this replied approximately about three months he had been doing it."

The testimony by officers Roth and Gardiner of the foregoing statements made by defendant to them could not possibly be any stronger as an acknowledgement of guilt of the particular act charged. Thus, since the statements constituted a purported confession, it was the duty of the court to require a proper foundation to determine whether they were voluntary, and to submit an appropriate cautionary instruction to the jury to determine whether the statements were voluntarily made. State v. Pulliam, 87 Ariz. 216, 349 P.2d 781; Galas v. State, 32 Ariz. 195, 256 P. 1053. Failure to do so constituted prejudicial error.

For the foregoing reasons, judgment reversed and remanded for new trial.

UDALL, V. C. J., and JENNINGS, J., concur.