472 P.2d 54

**STATE of Arizona, Appellee,**

v.

**William George BRAY, Appellant.**

No. 1610–2.

Supreme Court of Arizona,
In Banc.

July 6, 1970.

Gary K. Nelson, Atty. Gen., by Carl Waag, Asst. Atty. Gen., Phoenix, for appellee.

Rubin Salter, Jr., Tucson, for appellant.

UDALL, Justice:

William George Bray, hereinafter referred to as the defendant, was convicted in 1963 of the crime of first degree murder. The jury fixed the sentence at life imprisonment.

The defendant filed a notice of appeal in 1965 in persona pauperis. Thereafter the court-appointed counsel filed a petition with this court stating he had searched the record and been unable to find grounds on which to base an appeal. This court, after its own search of the record, found no reversible error and affirmed the judgment. State v. Bray, 99 Ariz. 180, 407 P.2d 760 (1965). On December 9, 1969 this court reinstated the appeal pursuant to Anders v. California, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967), and appointed counsel. In his brief, counsel for the defendant raises seven issues as grounds for the appeal.

The first ground for this appeal is that the jury which convicted defendant was improperly selected in that veniremen who voiced objection to the death penalty were excluded. Defendant relies upon Witherspoon v. Illinois, 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968) wherein the Supreme Court held that a sentence of

death could not be carried out if the jury imposing or recommending the death penalty was chosen by systematic exclusion of veniremen opposed to the death penalty.

Assuming that the jury in the instant case was so chosen, that fact is not grounds for reversal of defendant's conviction. Defendant here was not sentenced to death but was sentenced to life imprisonment. The Supreme Court in *Witherspoon* was careful to point out in footnote 21, "nor does the decision in this case affect the validity of any sentence *other* than one of death. Nor, finally, does today's holding render invalid the *conviction* as opposed to the *sentence,* in this or any other case."

Defendant here is thus improperly seeking to apply the rationale of *Witherspoon* in order to attack the validity of his conviction and sentence to life imprisonment. Witherspoon v. Illinois, supra, n. 21. See also Bumper v. North Carolina, 391 U.S. 543, 88 S.Ct. 1788, 20 L.Ed.2d 797 (1968).

■ Defendant's second contention is that the court improperly heard argument in chambers, outside the presence of defendant, relating to the admissibility of certain evidence. Defendant's position is that under Rule 231, Arizona Rules of Criminal Procedure, 17 A.R.S., defendant should have been present. Rule 231 provides in pertinent part as follows:

"A. In a prosecution for a felony, the defendant shall be present:

\* \* \* \* \* \*

5. When evidence is addressed to the court out of presence of the jury for the purpose of laying the foundation for the introduction of evidence before the jury."

We are unable to hold that the quoted portion of the rule is applicable to the situation at bar for the reason that no evidence was heard by the judge in chambers. The transcript indicates that the trial judge, outside the presence of the jury, heard only argument of counsel. No witness was present during the discussions. Rule 233 provides that " \* \* \* the defend-

ant need not be present during the making, hearing of, or ruling upon any motion or application addressed to the court \* \* \*" The defendant thus was not required under our rules to be present during the arguments of counsel.

Defendant's third and fourth contentions both concern the admissibility of testimony relating to statements made by the four-year-old son of the victim shortly after the victim was fatally shot.

"Q  Did you have the opportunity to go to the rear of the Diamond Buffet after you heard that unusual sound?

"A  Yes, when this man came in and told me to call the police, and I asked him why, then I ran out in back to see for myself what had happened.

"Q  What did you see out back?

"A  I seen Joyce in this car, slanted over.

\*　\*　\*　\*　\*　\*

"BY MR. BRENNAN:

"Q  What did you hear when you walked out?

"A  Well, I seen Joyce sitting sideways with her head down, just, you know, kind of just half way lying and half sitting.

"Q  Was she in the vehicle at that time?

"A  Yes.

"Q  Was anyone else present in that vehicle?

At this point a discussion was had between counsel and the court in chambers. The testimony then resumed as follows:

"BY MR. BRENNAN:

"Q  Ma'am, I believe my last question to you was who else was present in the vehicle at that time?

"A  Two children.

"Q  Whose children were they, do you know?

"A  They were her's.

"Q  Could you recall what they were doing at that particular time?

"A They was crying.

"Q Did either of these two children say anything to you at that time?

"A The little boy told me, he said, 'Daddy shot Mommy.'

"Q. Did he say anything else?

"A I believe he said, 'Daddy shot Mommy. Mommy is dead.'

"Q Did he say that just once?

"A No, he kept repeating himself.

"Q Do you recall how many times he might have said it?

"A No, I don't.

"Q Did you do anything with the children at that particular time?

"A I tried to get them out of the car, but they were frightened of me."

■ In attacking the admission of this testimony, defendant first contends there was no adequate foundation laid by the prosecution. As defendant correctly points out, the party offering testimony has the burden of showing that the witness had an adequate opportunity to observe. Mc-Cormick on Evidence, Sect. 10, p. 19 (1954). Defendant's brief apparently takes the position however that the prosecution failed to show that the witness had an adequate opportunity to observe the children. The record belies this contention. The quoted portion of the testimony clearly shows that the witness observed the children in the car within minutes of the shooting, that the witness knew the identity of the children and that she heard the child's statement and observed the children's reactions. With respect to the children themselves, their presence at the scene of the shooting was established not only by the testimony of this witness, but also by the testimony of a prior witness who was on the site even earlier.

■ Defendant also objects to the admission of the witness's testimony that the

child stated "Daddy shot Mommy. Mommy is dead." Defendant urges that the statement is hearsay and therefore should be excluded because there was no opportunity to cross-examine the child. The record shows that the trial court admitted the testimony as an excited utterance, a well-established exception to the hearsay rule. State v. Boodry, 96 Ariz. 259, 394 P.2d 196, cert. denied 379 U.S. 949, 85 S.Ct. 448, 13 L.Ed.2d 546 (1954); Udall on Evidence, Sect. 174 (1960). Defendant's brief in fact concedes that the statement was probably a spontaneous utterance. There can be no doubt that the shooting of the child's mother was an exciting event and that only a very short time elapsed between the event and the child's statement. See State v. Woolery, 93 Ariz. 76, 378 P.2d 751 (1963); State v. Dillon, 104 Ariz. 33, 448 P.2d 89 (1968).

■ Defendant suggests that despite these facts the statement should have been excluded on the rationale of Pointer v. Texas, 380 U.S. 400, 85 S.Ct. 1065, 13 L.Ed.2d 923 (1965). That case however involved the admission of a transcript at a preliminary hearing, where the defendant was not represented by counsel. We see no need to extend the rationale of that case to the spontaneous utterance of a child, which is admissible because of its inherent credibility. Indeed the United States Supreme Court in Pointer v. Texas, supra, at 407, 85 S.Ct. 1065, emphasized that its holding was not in conflict with such well-known exceptions to the hearsay rule as dying declarations.

Defendant's next assignment, designated number 5 in his brief, relates to the confession of defendant to a police officer shortly after the shooting. Defendant's counsel did not object to the policeman's testimony and in fact stipulated that the confession was voluntary and without coercion by the police.[1]

1. The pertinent portion of the transcript is as follows:
"Q. Now, did you have occasion to converse with Mr. Bray on the evening of May 19th?

A. I did.
Q. Who else was present at that time, sir?
A. Officer William Lindvall and Mr. Leslie Askren.

■ Defendant now urges that the confession may not have been voluntary because the defendant was intoxicated. Defendant therefore argues that the court should have held a hearing on the voluntariness and, if it determined that the confession should be admitted, instructed the jury that it should consider whether the confession was in fact involuntary because of intoxication.[2]

■ Since the defendant's counsel did not object to the admission of the confession and actually stipulated to its voluntariness, we must conclude that the trial court was not required to hold a hearing on voluntariness. State v. Armstrong, 103 Ariz. 280, 440 P.2d 307 (1968). We must also conclude that the trial court acted properly in not instructing the jury to consider the question of voluntariness. It is true that where a confession is objected to by defendant at trial on the grounds of voluntariness, the trial court should instruct the jury on the issue even though the defendant has not requested specific instructions. State v. Pulliam, 87 Ariz. 216, 349 P.2d 781 (1960); State v. Kellington, 93 Ariz. 396, 381 P.2d 215 (1963); State v. Suarez, 106 Ariz. 62, 470 P.2d 675 (1970). However, in the instant case there was no objection to the admission of the confession into evidence and the volun-tariness was stipulated. Moreover examination of the record indicates that defense counsel at trial as a matter of strategy did not wish to emphasize the possibility that defendant was intoxicated. When defendant himself took the stand he testified on direct examination that he was not drunk, and he recited in some detail the events of the day on which the crime occurred.

■ Similarly we must reject defendant's sixth ground for this appeal, that the trial court erred in not instructing the jury on the effect of voluntary intoxication on defendant's intent to commit murder. The transcript shows that defendant's counsel at trial expressly agreed that there would be no instruction relative to voluntary intoxication. The record thus indicates that the lack of instruction on the issue was the result of a conscious judgment on the part of defendant's counsel. As this court stated in State v. Ganster, 102 Ariz. 490, 495, 433 P.2d 620, 625 (1967):

"In a criminal case a trial judge is obliged to instruct the jury on his own motion upon the law relating to facts of that case and matters vital to a proper consideration of the evidence. Rule 274, Rules of Criminal Procedure, 17 A.R.S. However, generally the failure to give an instruction in the absence of a

---

Q. Do you recall what time that conversation took place?
A. Approximately 8:55.
Q. Where was that at, sir?
A. It was inside the Diamond Buffet.
Q. Now, did you in any way threaten the defendant to speak to you at that time?
A. I did not.
Q. Did you in any way coerce him?
A. No.
Q. Did you promise him immunity from prosecution?
MR. TANNER: Your Honor, we stipulate that what the defendant said was freely and without any coercion on the part of our police department.
THE COURT: Thank you, sir.
BY MR. BRENNEN:
Q. Now, Officer Beimers, would you, to the best of your recollection, relate the substance of that conversation?

A. When I first walked up—walked up to Mr. Bray, he identified himself by saying, "I did it, I killed her." I showed him the gun which I had obtained from Mr. Askren, which has been marked. I asked him if this was the gun he had used, and he said, "Yes, that's it, that's my gun." I asked him why he killed her, and he said he loved her, so he killed her.
MR. BRENNEN: No further questions, Your Honor."

2. The principles of Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966) are not applicable to the case at bar since those principles have been applied only to trials begun after June 13, 1966. Johnson v. New Jersey, 384 U.S. 719, 86 S.Ct. 1772, 16 L.Ed.2d 882 (1966).

**190**

request for same is not error. To constitute error the prejudice thereby caused must be of a fundamental nature which goes to the foundation of the case, or which takes from the defendant a right essential to his defense."

Under the circumstances of the instant case we are unable to hold that the failure to give an instruction on voluntary intoxication, in the absence of a request, constituted fundamental error.

■ We turn now to defendant's seventh and final assignment which relates to the court's instruction on manslaughter. Defendant contends that the instruction was misleading.

The instruction as given by the court comprised the first portion of an instruction requested by the defendant. Defendant's counsel did not take exception to the modification made by the court. Therefore it is not error.

■ Defendant now also urges that the court erred in not giving requested further instructions on passion. Defendant's counsel took exception to the court's refusal to give only one of these instructions. That requested instruction pertained to the possibility that several causes might combine to arouse passion. Instructions must be based upon some theory supportable by evidence in the case. State v. Randall, 94 Ariz. 417, 385 P.2d 709 (1963); State v. Denton, 101 Ariz. 455, 420 P.2d 930 (1966). Defendant points to nothing in the record suggesting several causes combined to produce a sudden quarrel or heat of passion, and we are unable to find any such evidence. The trial court's refusal to give the instruction was therefore not error.

■ A.R.S. 13-456 defines voluntary manslaughter as being "upon a sudden quarrel or heat of passion." Even had the court failed to give any instruction on manslaughter it would not have been error since the facts in the instant case did not warrant the giving of such an instruction. The defendant testified that he shot the victim

in the back of the neck. There was no evidence of a sudden quarrel. Defendant testified that he had returned to his home some time prior to the shooting to get his gun. We also note that defendant's counsel at trial expressly agreed that an instruction on A.R.S. 13-456 need not be given.

The judgment is affirmed.

LOCKWOOD, C. J., and STRUCK-MEYER, McFARLAND and HAYS, JJ., concur.