## OKINO ALAN JACKSON (a/k/a Okino Jackson Alan) *v.* STATE OF MARYLAND

[No. 426, September Term, 1975.]

*Decided May 5, 1976.*

The cause was argued before POWERS, GILBERT and MENCHINE, JJ.

*Carmel Snow, Assigned Public Defender,* for appellant.

*John A. Austin, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, William A. Swisher, State's Attorney for Baltimore City* and *Leslie Stein, Assistant State's Attorney for Baltimore City,* on the brief, for appellee.

POWERS, J., delivered the opinion of the Court.

The critical evidence against Okino Alan Jackson, the appellant in this case, came before the jury "second hand". Therein lies the basis of this appeal. At a jury trial in the Criminal Court of Baltimore, presided over by Judge Harry A. Cole, Jackson was convicted of carnal knowledge of a woman child under the age of fourteen years. The sentence was 21 years.

Foregoing the usually less effective shotgun attack upon everything in the record, from arrest to commitment, appellant takes sharp aim at one target. He argues that admission in evidence of res gestae statements made by a witness not competent to testify denied his right to cross examination under the confrontation clause of the Sixth Amendment.

## The Hearsay Evidence Admitted

The facts relevant to the issue before us are not complicated. The events upon which the charge was based took place on 21 April 1974. Corretta Venable, then 4 years and 3 months old, lived with her family in the 1000 block of

North Broadway, in Baltimore. Her mother, Lorraine Venable, testified that Corretta had been playing at the house of another child in the same block. At about 2:00 P.M. Mrs. Venable, looking out an upstairs window, saw Corretta coming home. She said she knew from the expression on the child's face that something was wrong with her. She called to Corretta to come upstairs. The transcript shows:

"Q [By Mr. Stein, Assistant State's Attorney]: Tell the ladies and gentlemen of the jury what happened when she came into the house.

A I asked what was wrong. She said, 'Kino - -'

MR. LEVINE [Defense counsel]: Objection.

THE COURT: Overruled.

BY MR. STEIN:

Q Go ahead, Ms. Venable.

A She said, 'Kino done it to me.' I said, 'Done what to you?' She was crying. She said, 'He took my pants off, my panties.'

MR. LEVINE: Objection.

THE COURT: Overruled.

MR. LEVINE: To this continuous testimony, Your Honor.

THE COURT: It's overruled.

BY MR. STEIN:

Q Go ahead, Ms. Venable.

A 'And my shoes. He put his wee-wee in me,' and she pointed down to her vagina. I then laid her on my bed, and pulled her panties down, and I looked in her vagina, and it was just like she was on her menstrual period.

MR. LEVINE: Objection as to what it was like.

THE COURT: Don't characterize. Tell us what you saw.

BY MR. STEIN:

Q What did you see when you looked at her vagina?

A I seen blood down there.

Q Ms. Venable, prior to this difficulty, or before this day, had you ever seen blood down there before?

A No, I haven't.

Q What was then your reaction when you saw the blood on her vagina?

A I started screaming and hollering. I called my oldest daughter.

Q What is the name of your oldest daughter?

A Paretta Venable."

Mrs. Venable identified the appellant in court as the person known in the neighborhood as Kino, an uncle of Corretta's playmate.

In the cross examination of Mrs. Venable the transcript reads:

"Q [By Mr. Levine]: Now, how many questions did you ask her before she gave her response?

A The only question I asked her was what was wrong, and she told me.

Q What were her exact words?

A She kept on saying, 'Kino done it to me. Kino done it to me. Kino done it to me,' and she was just crying and crying."

\* \* \*

"Q Well, could you please recall what you stated earlier about how she appeared when she first entered the house?

A She had an expression on her face. I knew something was wrong with her.

Q What was the expression on her face.

A Like she was getting ready to cry. After she got into the house, she just started to crying and crying. She said he put a knife to her leg."

Paretta Venable, Corretta's 19 year old sister, testified, in somewhat less detail, and also over objection, to substantially the same account of what Corretta said when she came home. After Mrs. Venable and her older daughter Paretta had testified, Judge Cole held a hearing in chambers to determine whether Corretta Venable was competent to testify as a witness at the trial. Corretta and her mother were present, as well as the accused and both counsel. The proceedings were recorded and transcribed. The judge ruled that the child, who by then had just reached her fifth birthday, was not competent to testify. That determination was within the court's discretion, and is not questioned.

There was other incriminatory evidence, but our decision turns on the admissibility of the testimony we have set out above. If admitting that testimony over objection was error, the error surely was not harmless, *Dorsey v. State*, 276 Md. 638, 350 A. 2d 665 (1976), and appellant's conviction would be reversed. If the rulings of the court were correct the conviction would stand.

The statements that the mother testified were made to her by the child were indeed genuine hearsay. The witness related what another person had said at another time and place. The evidence was offered, not merely to prove the fact that such utterances were made, but to prove, as substantive evidence, the truth of the facts stated in the utterances.

### The Dual Aspect of the Question

One aspect of our inquiry is whether, under the circumstances shown, the statements, although hearsay, were admissible under an exception to the rule which ordinarily excludes hearsay evidence. The other aspect of our inquiry is whether the admission of the statements, even if they pass muster under the rules of evidence as an exception to the hearsay rule, denied the accused his constitutional guarantee of the right to confront and cross examine witnesses against him.

### The Statements Were Excited Utterances

One of the exceptions to the hearsay rule permits the

admission in evidence of hearsay sometimes described as excited utterances, or spontaneous exclamations, or the less precise term, res gestae. In 6 Wigmore, *Evidence*, § 1747, (3d ed. 1940), the author discusses the exception in terms of the principles on which it is based. One is, the author says,

> "* * * the experience that, under certain external circumstances of physical shock, a stress of nervous excitement may be produced which stills the reflective faculties and removes their control, so that the utterance which then occurs is a spontaneous and sincere response to the actual sensations and perceptions already produced by the external shock. Since this utterance is made under the immediate and uncontrolled domination of the senses, and during the brief period when considerations of self-interest could not have been brought fully to bear by reasoned reflection, the utterance may be taken as particularly trustworthy (or, at least, as lacking the usual grounds of untrustworthiness), and thus as expressing the real tenor of the speaker's belief as to the facts just observed by him; and may therefore be received as testimony to those facts."

Other principles, those of necessity to resort to the hearsay statement, and the circumstantial probability of its trustworthiness, are explained in greater detail in §§ 1748 and 1749.

Those principles have been applied numerous times as the law of Maryland.

In *Estep v. State*, 14 Md. App. 53, 286 A. 2d 187, *cert. den.*, 265 Md. 737 (1972), Judge Gilbert, speaking for this Court, cited a long list of cases in the Court of Appeals and in this Court dealing with the admissibility in evidence of excited or spontaneous utterances under an exception to the hearsay rule. *Estep* and many, but not all, of the cited cases involved a report or complaint by the victim of a sexual assault. Several of the cases, such as *Green v. State*, 161 Md. 75, 155

A. 164 (1931), support the admissibility of a hearsay report as proper to corroborate the victim's evidence when the defense is consent, or that the charge is false.

A much less explicit complaint, made by a four year old child to her mother some four or five hours after the occurrence, was held by us in *Smith v. State*, 6 Md. App. 581, 586-87, 252 A. 2d 277 (1969), to be admissible through the mother as original evidence, although the victim herself was not a competent witness.

Even more analogous, if possible, to the legal principle involved, were the facts in a child abuse case, *Moore v. State*, 26 Md. App. 556, 338 A. 2d 344 (1975). A 3 1/2 year old boy was taken to the hospital, with extensive injuries. The surgeon testified that he asked the child why his tummy was hurting him. The witness quoted the response, "Daddy was mad, Daddy did it." In his opinion for the Court Judge Moylan said, at 560:

> "In response to the question as to 'why his tummy was hurting him,' the child declared, 'Daddy was mad, Daddy did it.' This, of course, is classic hearsay. The witness on the stand, Dr. Chilimindris, was recounting an out-of-court declaration by the three and one-half year old declarant which was being offered for the truth of the thing asserted — to wit, to prove that 'Daddy did it.' The declarant was not on the stand and, indeed, may have been incompetent (by virtue of age) to take the oath. He was not, therefore, subject to cross-examination.
>
> "We hold, however, that the out-of-court declaration was admissible in evidence upon a well-recognized and long-established exception to the Hearsay Rule — as an excited utterance which is a variety of the broader category known as spontaneous declarations."

After setting out the reasoning of the foremost text writers on the subject, and citing numerous Maryland

decisions which have applied the principle, Judge Moylan concluded, at 566:

"In the case at bar, this three and one-half year old child was in acute distress and suffering significant pain in a hospital emergency room within hours after the inflicting of massive injuries. It is stating the obvious to hold that the trial judge did not abuse his discretion in concluding that the declaration in issue was surrounded by substantial guarantees of trustworthiness and was not uttered designedly with a view to making evidence. Under those circumstances, it was clearly admissible."

We have no difficulty whatever in holding that admission of Mrs. Venable's testimony relating what her daughter Corretta reported to her, did not violate the rule against hearsay. As Judge Moylan said for the Court in *Moore v. State, supra,* at 561:

"The issue [of testimonial competence of the out of court declarant] is, furthermore, irrelevant since the testimonial qualifications do not apply to spontaneous declarations. In dealing with the declarant of an excited utterance, 6 *Wigmore on Evidence* (3d Edition 1940) said at § 1751, p. 156:

'Does the disqualification of *infancy* . . . exclude declarations otherwise admissible? It would seem not; because the principle of the present Exception obviates the usual sources of untrustworthiness . . . in children's testimony; because, furthermore, the orthodox rules for children's testimony are not in themselves meritorious . . . and, finally, because the oath-test, which usually underlies the objection to children's testimony, is wholly inapplicable to them.' "

The Right of Confrontation

Article 21 of the Declaration of Rights of Maryland says:

"That in all criminal prosecutions, every man hath a right * * * to be confronted with the witnesses against him * * *."

This was organic law in Maryland long before *Pointer v. Texas*, 380 U. S. 400, 85 S. Ct. 1065, 13 L.Ed.2d 923 (1965), held that a similar guarantee in the Sixth Amendment to the Constitution of the United States was applicable to State criminal prosecutions. The Sixth Amendment guarantee is that:

"In all criminal prosecutions, the accused shall enjoy the right * * * to be confronted with the witnesses against him * * *."

Both the Federal and the State guarantees of the right of confrontation appear to be identical. We know of no case which has considered them to be otherwise. Both, then, are equally binding in criminal prosecutions in Maryland, as a matter of Federal as well as State constitutional law.

In *State v. Collins*, 265 Md. 70, 288 A. 2d 163 (1972), the Court of Appeals held that the constitutional right of the accused to confront a witness against him was violated by the admission in evidence of a pretrial deposition of a State witness, at which the accused was not present and had not waived his right to be present. The Court went on to point out, however, that the deposition testimony was not taken as required by Maryland Rule 727, and was not admissible under any of the recognized exceptions to the privilege of confrontation.

The principle has been recognized and applied in many other cases by the Court of Appeals and by this Court, but never in the context of a collision between the right of confrontation and the admissibility, under a recognized exception to the hearsay rule, of an excited utterance by a person not available or not competent to testify at the trial.

We think it is significant that in none of the Maryland

cases dealing with admissibility of excited utterances has the right of confrontation been mentioned. It is also significant that the Supreme Court seems never to have considered the right of confrontation in relation to an excited utterance exception to the hearsay rule.

A careful examination of the Supreme Court's pronouncements involving the right of confrontation discloses no affirmative expression of a rule to be applied to the case now before us. The cases, and the nature of the evidence as to which the accused claimed he was denied his right of confrontation are: *Mattox v. United States*, 146 U. S. 140, 13 S. Ct. 50, 36 L. Ed. 917 (1892), dying declaration; *Mattox v. United States*, 156 U. S. 237, 15 S. Ct. 337, 39 L. Ed. 409 (1895), prior sworn statement; *Kirby v. United States*, 174 U. S. 47, 19 S. Ct. 574, 43 L. Ed. 890 (1899), dying declaration, use of record of prior trial; *Motes v. United States*, 178 U. S. 458, 20 S. Ct. 993, 44 L. Ed. 1150 (1900), testimony at a preliminary hearing; *Dowdell v. United States*, 221 U. S. 325, 31 S. Ct. 590, 55 L. Ed. 753 (1911), use of certified record of the course of a trial; *Pointer v. Texas, supra*, testimony at a preliminary hearing; *Douglas v. Alabama*, 380 U. S. 415, 85 S. Ct. 1074, 13 L.Ed.2d 934 (1965), use of prior confession made by witness who refused to testify; *Barber v. Page*, 390 U. S. 719, 88 S. Ct. 1318, 20 L.Ed.2d 255 (1968), testimony at a preliminary hearing; *Bruton v. United States*, 391 U. S. 123, 88 S. Ct. 1620, 20 L.Ed.2d 476 (1968), use of prior confession made by codefendant who did not testify; *California v. Green*, 399 U. S. 149, 90 S. Ct. 1930, 26 L.Ed.2d 489 (1970), testimony at a preliminary hearing; *Dutton v. Evans*, 400 U. S. 74, 91 S. Ct. 210, 27 L.Ed.2d 213 (1970), a somewhat confusing plurality opinion concerning statements by an alleged accomplice of the defendant to a cellmate, related in the testimony of the cellmate.

Our conclusion in the case now before us is suggested, in part, by comments by Mr. Justice White in *California v. Green, supra.* He said for the Court, at 155-56:

"While it may readily be conceded that hearsay

rules and the Confrontation Clause are generally designed to protect similar values, it is quite a different thing to suggest that the overlap is complete and that the Confrontation Clause is nothing more or less than a codification of the rules of hearsay and their exceptions as they existed historically at common law. Our decisions have never established such a congruence; indeed, we have more than once found a violation of confrontation values even though the statements in issue were admitted under an arguably recognized hearsay exception. See *Barber v. Page*, 390 U. S. 719 (1968); *Pointer v. Texas*, 380 U. S. 400 (1965). The converse is equally true: merely because evidence is admitted in violation of a long-established hearsay rule does not lead to the automatic conclusion that confrontation rights have been denied."

He said further, at 161-62:

"Finally, we note that none of our decisions interpreting the Confrontation Clause requires excluding the out-of-court statements of a witness who is available and testifying at trial. The concern of most of our cases has been focused on precisely the opposite situation — situations where statements have been admitted in the absence of the declarant and without any chance to cross-examine him at trial. These situations have arisen through application of a number of traditional 'exceptions' to the hearsay rule, which permit the introduction of evidence despite the absence of the declarant usually on the theory that the evidence possesses other indicia of 'reliability' and is incapable of being admitted, despite good-faith efforts of the State, in any way that will secure confrontation with the declarant. Such exceptions, dispensing altogether with the literal right to 'confrontation' and cross-examination, have

been subjected on several occasions to careful scrutiny by this Court."

We conclude that a State court may, in a criminal trial, under appropriate circumstances, constitutionally dispense altogether with the literal right to confrontation and cross examination. One might view the confrontation clause and the hearsay exceptions as represented by circles, not quite concentric, but sharing a substantial area covered by both. When a question arises in the area covered by both, either rule alone provides sufficient protection to the rights of the accused.

The hearsay rule exception which made admissible in evidence against the appellant the excited utterances of Corretta Venable to her mother and sister came into play only when it was shown by the circumstances that the probability of accuracy and trustworthiness was sub-stantially equivalent to that of statements tested by conventional confrontation and cross examination.

We hold that the rulings of the court admitting the testimony were correct.

*Judgment affirmed.*