**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Eneas Lavern NICK,
Defendant-Appellant.**

No. 78–2382.

United States Court of Appeals,
Ninth Circuit.

Aug. 22, 1979.

Rehearing Denied Oct. 18, 1979.

---

Judith A. Corbin, Asst. U. S. Atty. (argued), Spokane, Wash., for plaintiff-appellee.

Claude F. Bailey (argued), Quackenbush, Dean, Bailey & Henderson, Spokane, Wash., for defendant-appellant.

Before CARTER and HUFSTEDLER, Circuit Judges, and MURRAY,* District Judge.

PER CURIAM:

Nick appeals from his conviction for sexually assaulting a three-year-old boy. Nick and the child are Indians, and the crime occurred on an Indian Reservation. On appeal, Nick contends that the district court erred (1) in denying his motion to suppress inculpatory statements that he claims were taken in violation of his *Miranda* rights, and

---

* Honorable Frank J. Murray, Senior United States District Judge, District of Massachusetts, sitting by designation.

(2) in admitting, over hearsay and confrontation clause objections, damaging statements of the victim reported in the testimony of the child's mother and his physician.

The assault occurred when Nick was babysitting the child. The child's mother had known Nick for many years, and the child was well acquainted with Nick. When the child's mother picked up the youngster, the child was asleep with Nick in a locked bedroom. The child's pants were unzipped. After she brought the child home, she observed "white stuff" in the youngster's clothing. The mother asked the child whether Nick had done anything to him, and the child responded, "Yeah, Eneas [Nick] stuck his tutu in my butt." The child also stated that Nick had hurt him and made him cry. The following day, a physician examined the child, and found physical evidence consistent with penetration of the child's rectum. The physician testified about the child's description of the assault. Expert testimony identified the stains on the child's clothing as semen.

The child's mother reported the incident to Nomee, a tribal policeman. Nomee went to Nick's house and placed him under arrest. When Nomee put Nick in his car to drive him to jail, he advised Nick of his *Miranda* rights. Nick asked Nomee to look in Nick's bedroom for a piece of paper with his lawyer's name and telephone number on it. Nomee testified that he later looked for the paper, but he did not find it until after Nick had confessed, been arraigned, and had counsel appointed for him.

Nomee called BIA Agent Ough, who in turn called FBI Agent Elkington. Nomee related Nick's request for the paper to Ough, but neither Nomee nor Ough told Elkington of Nick's request, although Ough told Nomee he would do so. Elkington interviewed Nick the day after the arrest. Elkington again advised Nick of his *Miranda* rights, and Nick thereafter signed a waiver form and agreed to talk about the incident. Ough was present throughout Elkington's interrogation of Nick, including Nick's reading and signing the waiver of rights form. Ough did not bring up Nick's

request for the piece of paper before or during that time. During the course of the interrogation, Nick first denied having assaulted the child, but he later admitted the crime. After the confession, Nick again requested the "piece of paper."

**I**

■ We reject the Government's argument that Nick never effectively requested counsel. His request for counsel might have been phrased more artistically, but we think that it was more than adequate to assert his right to counsel.

■ The more difficult question is whether the Government carried its heavy burden of proving that Nick knowingly and intentionally waived his right to counsel after invoking that right. (*Brewer v. Williams*, 430 U.S. 387, 97 S.Ct. 1232, 51 L.Ed.2d 424 (1977).) The strict standard of *Johnson v. Zerbst*, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938) applies and "every reasonable presumption [is] against waiver." (Id. at 404, 97 S.Ct. 1232, 1242, 51 L.Ed.2d 424.) We recognize that an express written waiver of the right to counsel is strong evidence of a valid waiver although it is by no means always sufficient to establish waiver. (*North Carolina v. Butler*, —— U.S. ——, 99 S.Ct. 1755, 60 L.Ed.2d 286 (1979).) The interrogation did not follow "hard on the heels of the demand for counsel." (*See, e. g., United States v. Nixon*, 571 F.2d 1121 (9th Cir. 1978).) On the other hand, Nick is mildly retarded and has limited verbal skills. Nick himself testified that he did not know what the waiver form meant and that he signed the form thinking it would help him. But for *United States v. Rodriguez-Gastelum*, 569 F.2d 482 (9th Cir. en banc 1978), we may have decided that the Government fell short of sustaining its heavy burden. But fidelity to *Rodriguez-Gastelum* requires us to support the district court on the waiver point.

**II**

■ Pursuant to the district court's ruling *in limine*, the physician was permitted to testify only to those portions of the

child's statements that were relevant to the cause of the injury, omitting the identity of the assailant. The child's declarations were corroborated by the doctor's examination of the child and of the child's clothing. The doctor's quotations of the child were hearsay, but they were admissible under Federal Rules of Evidence, Rule 803(4) admitting hearsay statements "made for purposes of medical diagnosis or treatment and describing . . . the inception or general character of the cause or external source [of pain or symptoms] insofar as reasonably pertinent to diagnosis or treatment." (*Britt v. Corporacion Peruana de Vapores,* 506 F.2d 927 (5th Cir. 1975). *See United States v. Lechoco,* 177 U.S.App.D.C. 9, 14 n. 6, 542 F.2d 84, 89 n. 6 (1976).)

■ Nick also challenges the admission, over hearsay objection, of the mother's testimony concerning the child's statements to her including the youngster's identification of Nick as his assailant. The district court overruled Nick's objection on the ground that the statement was admissible under the excited utterances exception to the hearsay rule in Rule 803(2) of the Federal Rules of Evidence. That section permits the introduction of a hearsay statement "relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition." Contrary to Nick's argument, we believe that the record amply sustains the district court's conclusion that the child was suffering distress from the assault when he told his mother what happened and identified Nick as the perpetrator of the offense. The district court correctly overruled the hearsay objection. (*United States v. Chee,* 422 F.2d 52 (9th Cir. 1970); *United States v. Napier,* 518 F.2d 316, 317–18 (9th Cir. 1975).)

### III

The troublesome issue is whether the district court erred in overruling Nick's objections to the admissible hearsay on the ground that the testimony violated his confrontation right secured by the Sixth Amendment. (*California v. Green,* 399 U.S. 149, 90 S.Ct. 1930, 26 L.Ed.2d 489 (1970); *Pointer v. Texas,* 380 U.S. 400, 85 S.Ct. 1065, 13 L.Ed.2d 923 (1965).) We must reach the constitutional question because the child's statements to his mother and to his physician were admissible hearsay. "While it may readily be conceded that hearsay rules and the Confrontation Clause are generally designed to protect similar values, it is quite a different thing to suggest that the overlap is complete and that the Confrontation Clause is nothing more or less than a codification of the rules of hearsay and their exceptions as they existed historically at common law. . . . [W]e have more than once found a violation of confrontation values even though the statements in issue were admitted under an arguably recognized hearsay exception." (*California v. Green, supra,* 399 U.S. at 155–56, 90 S.Ct. at 1933–1934.)

The problem in this case is whether the confrontation clause prevented reception of the hearsay evidence because the declarant was not subjected to cross-examination at any time, and, as a practical matter, could not have been subjected to cross-examination even if he had been called as a witness by reason of his extremely tender years. If the sole method by which the confrontation clause could be satisfied was the opportunity to cross-examine the declarant in court either at the time the statement was made or at the time the statement was offered, the infant's statement could never be received in evidence. The same restrictive reading of *California v. Green, supra,* would also foreclose the reception of many other kinds of admissible hearsay, such as dying declarations. *Green* itself, however, reminded us that the Supreme Court had "no occasion in the present case to map out a theory of the Confrontation Clause that would determine the validity of all such hearsay 'exceptions' permitting the introduction of an absent declarant's statements." (*Id.* at 162, 90 S.Ct. at 1937.)

■ Whatever implications to the contrary might have been drawn from *California v. Green,* the Supreme Court in *Dutton v. Evans,* 400 U.S. 74, 91 S.Ct. 210, 27

L.Ed.2d 213 (1970) made plain that the availability of cross-examination was not the sole criterion by which to test the admissibility of hearsay over confrontation clause objection. In this context, the essential confrontation clause issue is whether the admissible hearsay, under all of the circumstances, has a very high degree of reliability and trustworthiness and there is a demonstrated need for the evidence. The availability of cross-examination is simply one of the means by which the quality of reliability is tested.

Both the confrontation clause and the hearsay rule are based, among other things, upon a belief that some kinds of relevant evidence should not be admitted unless the probative value of the evidence and its trustworthiness under all of the circumstances substantially outweigh the risks of unreliability that are assumed to flow from the inability to test the declarant's credibility, memory, perception, and ability to communicate in the courtroom in which the testimony is received. The exceptions to the hearsay rule found in the Evidence Code, largely, but not entirely adopting common law exceptions, are designed to facilitate the admission of probative evidence and, at the same time, to minimize the risks of unreliability.[1]

In a criminal trial, probative evidence, otherwise admissible, may nevertheless be excluded to protect constitutional values that are deemed to weigh more heavily in the scales of justice. The values inhering in the confrontation clause cannot be effectively preserved by any mechanical application of the hearsay rule. The question in each case must be whether a particular hearsay declaration, otherwise admissible, has such great probative value as evidence of a material fact and such a high degree of trustworthiness under all of the circumstances that its reception outweighs any risk to a defendant that unreliable evidence may be received against him, the deficiencies of which he cannot adequately test because he cannot cross-examine the declarant.

Rule 803(24) provides a useful set of criteria to be used not only in weighing the admissibility of the evidence for hearsay rule purposes, but also for the purposes of the confrontation clause: The circumstances under which the statement was made must indicate a very high degree of reliability and trustworthiness; the statement must be offered as evidence of a material fact; the statement, although not essential for proof of the point for which it is offered, must be "more probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts;" and the interest of justice will best be served by admission of the statement into evidence.[2] (*Cf. Dutton v. Evans, supra,* 400 U.S. at 88–89, 91 S.Ct. 210, 27 L.Ed.2d 213; *United States v. Lee,* 589 F.2d 980, 988 (9th Cir. 1979); *United States v. Weiner,* 578 F.2d 757, 772 (9th Cir. 1978); *Jackson v. State, infra,* 356 A.2d at 301–02; *People v. Kelley, supra,* 188 N.W.2d at 663–64. *See also* Note, "Preserving the Right to Confrontation—A New Approach to Hearsay Evidence in Criminal Trials," 113 U. of Pa.L.Rev. 741, 748, 751–52, 766–68 (1965).)

1. "The exceptions are phrased in terms of nonapplication of the hearsay rule, rather than in positive terms of admissibility, in order to repel any implication that other possible grounds for exclusion are eliminated from consideration.

"The present rule proceeds upon the theory that under appropriate circumstances, a hearsay statement may possess circumstantial guarantees of trustworthiness sufficient to justify nonproduction of the declarant in person at the trial even though he may be available. The theory finds vast support in the many exceptions to the hearsay rule developed by the common law in which unavailability of the declarant is not a relevant factor. The present rule is a synthesis of them, with revision where modern development and conditions are believed to make that course appropriate." (Notes of Advisory Committee on Proposed Rules, Rule 803, 28 U.S.C.A. p. 584 (West 1975).)

2. In a jury case, the district court, outside the presence of the jury, should test the proffered declaration against these criteria. And, only after it is satisfied that these high standards have been met, should the court permit the introduction of the hearsay statement. (*E. g., People v. Kelley,* 32 Mich.App. 126, 188 N.W.2d 654, 663–64 (1971).)

█ We now apply these criteria to decide whether, under all of the circumstances, the child's declaration to his mother had significant guarantees of trustworthiness. The child's statement was directly responsive to his mother's question about the soiled condition of his apparel and his upset condition. The statement was made while the child was still suffering pain and distress from the assault. The childish terminology has the ring of verity and is entirely appropriate to a child of his tender years. The child's statement was corroborated by physical evidence on his person and on his apparel. It is extremely unlikely that the statement under these circumstances was fabricated. The statement was unquestionably material, and it was more probative as to the identity of the assailant than any other evidence, except Nick's confession. The declaration to his mother at the time of the event was more, rather than less probative than testimony that he might have been able to give months after the event even if the district court would have found him competent. (Fed.R.Evid., Rule 601.) The interests of justice were served by admitting the declaration of this child, who was the victim of a sexual assault, and far too young to appreciate the implications of that assault.

Finally, that portion of the statement identifying Nick as the assailant is inherently trustworthy under all of the circumstances of this case. Extrinsic evidence established that Nick had the opportunity to commit the crime. The child knew Nick well, and he was not likely to mistake his assailant. The mother was not likely to have had any faulty recollection of the child's simple, shocking seven-word statement. Moreover, she herself was subject to rigorous cross-examination on that score.[3]

We conclude that the district court correctly overruled Ñick's confrontation clause objection in receiving the child's statement to his mother. The policies preserved by the confrontation clause, and recognized by this exception to the hearsay rule, were fully vindicated.

AFFIRMED.

HUFSTEDLER, Circuit Judge, concurring specially:

I would reverse this case for *Miranda* error if I were free to do so, because I adhere to the views I expressed in dissent in *United States v. Rodriguez-Gastelum, supra,* 569 F.2d 482. I concur in an affirmance of the conviction on the *Miranda* point under the compulsion of the majority opinion in *United States v. Rodriguez-Gastelum, supra.*

JAMES M. CARTER, Circuit Judge, concurring specially:

I cannot agree that Nick, the appellant, effectively requested counsel. I think the facts show that he did not.

However, assuming that he did request counsel, I am in agreement that Nick knowingly and intentionally waived his right to counsel.

I concur in the affirmance of the conviction.

---

3. The state courts have reached similar conclusions in similar cases applying the excited utterance exception to the hearsay rule. (*E. g., Jackson v. State,* 31 Md.App. 332, 356 A.2d 299 (1976) (in trial for sexual assault on four-year-old child, testimony of child's mother that, shortly after the event, child told her: "Kino done it to me . . . he took my pants off . . . [and] put his wee-wee in me" was admissible under *res gestae* exception to hearsay rule); *State v. Bray,* 106 Ariz. 185, 472 P.2d 54 (1970) (*res gestae* exception to hearsay rule permitted introduction of witness' testimony in murder trial that, shortly after the shooting, defendant's child said, "Daddy shot Mommy. Mommy is dead.").)