March 19, 1992

24

CLERK OF COURT
SUPREME COURT. CNMI
FILED

92 MAR 19 A8: 5³

BY:

## IN THE SUPREME COURT OF THE
## COMMONWEALTH OF THE NORTHERN MARIANA ISLANDS

COMMONWEALTH OF THE NORTHERN ) APPEAL NO. 91-001
MARIANA ISLANDS, ) CRIMINAL CASE NO. 90-90
)
 Plaintiff/Appellee, )
)
 vs. ) OPINION
)
LEANDRO BERGONIA, )
)
 Defendant/Appellant. )
_____ )

Argued and Submitted October 17, 1991

Counsel for Appellant: Reynaldo O. Yana
 P.O. Box 52
 Saipan, MP 96950

Counsel for Appellee: Robert P. Kingsley
 Assistant Attorney General
 Office of the Attorney General
 Capitol Hill
 Saipan, MP 96950

BEFORE: DELA CRUZ, Chief Justice, VILLAGOMEZ and BORJA, Justices.

VILLAGOMEZ, Justice:

### I.

### BACKGROUND

Leandro Bergonia ("Bergonia") had a bench trial on November 8 and 9, 1990, and was convicted of sexually abusing a child, in violation of 6 CMC § 1311.

25

The government called as witnesses, the mother of the alleged victim, an examining physician, and a police officer. The court ruled that the alleged victim, a five-year-old girl, was incompetent to testify.

The child's mother testified that on April 20, 1990, she took the child to a babysitter at 7:00 a.m. and returned to pick the child up at 5:00 p.m. The mother was acquainted with Bergonia through the babysitter.

When she picked up the child, the latter was initially anxious to talk to her, but then fell silent. After her mother initiated a conversation, the child told her about a dream she had in which a man touched her "pee pee"--her vagina. When the mother reacted with an apparent discomfort, the child said nothing further.

That evening, the child refused to change her clothes before going with the family to a party. At the party, the mother noticed that the child was behaving strangely, but did not know why. At approximately 9:00 p.m., the mother took the child aside and asked her questions about what had happened earlier that day.

The child then told her that she had been sitting on the floor watching television when a man came from behind, straddled her with his legs, put his arms around her, and raised her skirt. He then put his fingers inside her panties and started to touch her "pee pee." The child did not call for the babysitter when this occurred because she had earlier been told not to wake up a baby who was sleeping in the house. Instead, she simply cried silently.

The child was frightened as she recounted this story to her

26

mother. The mother later spoke to the babysitter and her husband about the incident her daughter described.

While washing the child's clothing the next day, the mother noticed what appeared to be blood stains on the child's panties.

That evening, the child's father examined her daughter's vagina and asked her what happened. She acted out the incident with her father, showing him how the man allegedly touched her vagina. Later, the father, mother and child went to the babysitter's residence. When the child saw Bergonia outside the residence, she pointed to him and told them that he was the person who had touched her vagina.

Her parents thereupon contacted the police. The mother took the child to the Commonwealth Health Center (CHC), where she was examined by Dr. Ann Bollay.

Dr. Bollay testified that the child was brought in for an examination. She initially obtained some background information from the nurse who interviewed the mother when they arrived.

Dr. Bollay then asked the child about the incident. The child told her that a man had inserted his finger into her vagina, that he had used nothing else, and that it hurt when she went to "pee pee." Dr. Bollay then examined the child's vagina and observed redness at the entrance.

Detective Antonio Borja, the investigating officer, testified that he had seen the child's panties and confirmed that they were stained by what appeared to be dried blood.

At the conclusion of the trial, the court found Bergonia

27

guilty. On December 12, 1990, he was sentenced to five years imprisonment (two-and-one-half years of which was suspended) and ordered to perform four hundred hours of community service.

Bergonia appeals his conviction.

## II.

## ANALYSIS

Bergonia asserts that the trial court erred in admitting hearsay evidence and that the court's verdict is not supported by substantial evidence. He also contends that 6 CMC § 1311 violates his due process rights because it is overbroad and vague. We will analyze these claims separately.

## A. Admission of Hearsay Evidence

Bergonia contends that the trial court erred in allowing the mother and Dr. Bollay to testify as to what the child told them.

A trial court's decision to admit evidence over a timely objection is subject to review under the abuse of discretion standard. An error in such decision is to be disregarded if it does not affect substantial rights of the defendant. Commonwealth v. Mendiola, No. 90-027 (N.M.I. Jan. 28, 1991) (amended opinion).

### Statement to the Mother

The child's statements to the mother were admitted pursuant to Com.R.Evid. 803(2), which provides:

> The following are not excluded by the hearsay rule, even though the declarant is available as a witness:
>
> . . . .

28

> (2) Excited utterance. A statement relating to a
> startling event or condition made while the declarant was
> under the stress of excitement caused by the event or
> condition.

. . . .

According to an analysis of Fed.R.Evid. 803(2), upon which Com.R.

Evid. 803(2) is patterned:

> The excited utterance exception is based on the belief
> that the statement is reliable because it is made while
> the declarant is under the stress of excitement. It is
> unlikely that the statement is contrived or the product
> of reflection. . . . .

. . . .

> Three elements are necessary for the admission of an
> excited utterance. First, there must be an event
> startling enough to cause nervous excitement. Second,
> the statement must be made before there is time to
> contrive or misrepresent. And, third, the statement must
> be made while the person is under the stress of the
> excitement caused by the event.

> There are no rigid guidelines for determining whether a
> statement is spontaneous. Rather, a court must assess
> various factors on a case by case basis. One of the most
> relevant factors in determining spontaneity is the length
> of time between the event and the statement.

Haggins v. Warden, Ft. Pillow State Farm, 715 F.2d 1050, 1057 (6th

Cir. 1983), cert. den. 464 U.S. 1071, 104 S.Ct. 980, 79 L.Ed.2d 217

(1984).

Bergonia contends that the statement made by the child to her

mother could not be admitted under Com.R.Evid. 803(2) because at

least four hours had elapsed from the time the alleged molestation

took place to the time she told her mother. We disagree.

> The lapse of time between the startling event and the
> out-of-court statement[,] although relevant[,] is not
> dispositive in the application of rule 803(2). Nor is it
> controlling that [the declarant's] statement was made in
> response to an inquiry. Rather, these are factors which

the trial court must weigh in determining whether the offered testimony is within the 803(2) exception. Other factors to consider include the age of the declarant, the physical and mental condition of the declarant, the characteristics of the event and the subject matter of the statements. In order to find that 803(2) applies, it must appear that the declarant's condition at the time was such that the statement was spontaneous, excited or impulsive rather than the product of reflection and deliberation.

United States v. Iron Shell, 633 F.2d 77, 85-86 (8th Cir. 1980), cert. den. 450 U.S. 1001, 101 S.Ct. 1709, 68 L.Ed.2d 203 (1981).

In cases involving charges of sexual molestation of a minor, some jurisdictions allow a victim's statements to be admitted under the "excited utterance" exception despite the lapse of several hours from the occurrence of the incident when it is plain that the victim was still laboring under stress of nervous excitement and the possibility of fabrication was slight. "Generally speaking, a less demanding time requirement is necessary in sexual-offense cases, particularly when the victim is a child of tender years." State v. Creighton, 462 A.2d 980, 982 (R.I. 1983). In Creighton, a statement by a nine-year-old victim to a police officer fourteen hours after the incident occurred was admitted under the excited utterance exception.[1]

In this case the trial court could reasonably conclude that the necessary elements were satisfied. The mother testified that

---

[1]See also People v. Ortega, 672 P.2d 215 (Colo. Ct. App. 1983) (admitting statements by four-year-old boy to mother, physician and police officer morning after incident occurred); State v. Woodward, 646 P.2d 135 (Wash. Ct. App. 1982) (admitting statement by five-and-a-half-year-old victim to her mother twenty hours after incident).

30

the child was fearful and upset when she described the incident to her that evening. Under the circumstances, the trial court could find that the incident was a startling event, that the child spoke before there was time to contrive; and that she spoke while still under the stress of the excitement.

In _United States v. Nick_, 604 F.2d 1199 (9th Cir. 1979), statements by a three-year-old victim of sexual molestation to his mother were admitted over objection. The case is similar to the case at bar in that the victim was ruled incompetent to testify. The _Nick_ court's analysis equally apply here:

> The statement was made while the child was still suffering pain and distress from the assault. The childish terminology has the ring of verity and is entirely appropriate to a child of his tender years. The child's statement was corroborated by physical evidence on his person and on his apparel. It is extremely unlikely that the statement under these circumstances was fabricated. . . . The interests of justice were served by admitting the declaration of this child, who was the victim of a sexual assault, and far too young to appreciate the implications of that assault.

604 F.2d at 1204.

The trial court did not abuse its discretion in admitting the child's statements to her mother.

### Statement to the Physician

The child's statements to Dr. Bollay were admitted under Com.R.Evid. 803(4), which provides:

> The following are not excluded by the hearsay rule, even though the declarant is available as a witness:

> . . . .

31

(4) Statements for purpose of medical diagnosis or treatment. Statements made for the purposes of medical diagnosis or treatment and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment.

. . . .

There are two policy justifications behind this rule:

> First, it is assumed that a patient has a strong motive to speak truthfully and accurately because the treatment or diagnosis will depend in part upon the information conveyed. The declarant's motive thus provides a sufficient guarantee of trustworthiness to permit an exception to the hearsay rule. Second . . . a fact reliable enough to serve as the basis for a diagnosis is also reliable enough to escape hearsay proscription.

United States v. Renville, 779 F.2d 430, 436 (8th Cir. 1985) (analysis of Fed.R.Evid. 803(4), identical to Com.R.Evid. 803(4); citations and quotation marks omitted). "A two-part test flows naturally from this dual rationale: first, is the declarant's motive consistent with the purpose of the rule; and second, is it reasonable for the physician to rely on the information in the diagnosis or treatment." Iron Shell, 633 F.2d at 84.

Bergonia contends that the mother took the child to the hospital not for treatment but "to plant" hearsay evidence against him which the doctor could testify to in court.

Rule 803(4) "is limited to facts related which are 'reasonably pertinent to diagnosis or treatment;' it has never been held to apply to accusations of personal fault, either in a civil or criminal context." United States v. Narciso, 446 F.Supp. 252, 289 (E.D. Mich. 1977). On the other hand, "[e]ach case must, of

32

course, rest on its own facts, but the test is whether a doctor would rely on the facts contained therein solely for treatment of the patient's specific condition." *Id*. Here, the trial court could have found that the child's statements were made for diagnosis and subsequent treatment.

Statements in which child victims describe their assailant have been admitted under Rule 803(4) in child sex-abuse cases. United States v. Iron Shell, *supra*. United States v. Nick, *supra*.

The reasoning in these and other cases is that, "a young child will have the same motive to make true statements for the purpose of diagnosis or treatment as an adult", and "a physician in determining treatment may rely on factors in child abuse cases such as an assailant's identity that would not be relied on were the patient an adult." Morgan v. Foretich, 846 F.2d 941, 949-950 (4th Cir. 1988) (emphasis added).

We, therefore, hold that the trial court did not abuse its discretion in admitting the child's statements to Dr. Bollay.[2]

---

[2]One additional point must be addressed. As noted above, Bergonia asserts that the child's mother did not take her daughter to Dr. Bollay for treatment but to build a case against him. Even if there was some evidence for this charge, it is irrelevant. Rule 803(4) "abolished the [common-law] distinction between the doctor who is consulted for the purpose of treatment and an examination for the purpose of diagnosis only; the latter usually refers to a doctor who is consulted only in order to testify as a witness." Iron Shell, 633 F.2d at 83. See Fed.R.Evid. 803(4), Notes of Advisory Committee on 1972 proposed rules:

> Conventional doctrine has excluded from the hearsay exception, as not within its guarantee of truthfulness, statements to a physician consulted only for the purpose of enabling him to testify. While these statements were not admissible as substantive evidence, the expert was

33

## B. Sufficiency of the Evidence

Bergonia contends that the trial court's verdict was not supported by substantial evidence.

█In a challenge to the sufficiency of the evidence in an appeal of a criminal conviction, we must consider evidence in a light most favorable to the government and determine whether any reasonable trier of fact could have found the essential elements of the crime beyond a reasonable doubt. CNMI v. Kaniki, No. 90-063 (N.M.I. Oct. 25, 1991).

Bergonia bases this claim upon the asserted inadmissibility of the child's statements to her mother and to Dr. Bollay. As set forth above, the trial court did not abuse its discretion in admitting those statements.

█Sufficient evidence was presented to enable the trial court to find the essential elements of the crime beyond a reasonable doubt. Kaniki, supra.[3]

## C. Constitutional Claim

Bergonia contends that the statute under which he was convicted, 6 CMC § 1311, violates the Due Process Clause of the

---

█ allowed to state the basis of his opinion, including statements of this kind. The distinction thus called for was one most unlikely to be made by juries. The rule accordingly rejects the limitation.

[3]We note that proof of the requisite specific intent for sexual abuse of a child may be shown by direct or circumstantial evidence. See, e.g., State v. Gilley, 615 P.2d 827 (Kan. App. 1980) (sufficient direct and circumstantial evidence presented to sustain conviction for indecent liberties with child).

34

Fourteenth Amendment to the United States Constitution (hereafter "Fourteenth Amendment"). He contends that the statute is unconstitutionally vague and overbroad.

6 CMC § 1311 provides, in pertinent part:

> (a) It is unlawful to engage in sexual contact . . . with any child under the age of 16 years who is not the spouse of the perpetrator.
>
> (b) For purposes of this section:
>
> . . . .
>
> (3) "Sexual Contact" means any fondling or touching of the person of . . . the child . . . done or submitted for the purpose of sexual arousal or gratification, aggression, degradation, or other similar purposes.
>
> . . . .
>
> (c) A person convicted under this section may be punished by not more than five years imprisonment, or a fine of not more than $2,000 or both.

Bergonia contends that babysitters and parents could be prosecuted under the statute "because they [hold] their babies, bathe them or simply show affection for them by kissing them." Appellant's brief at 14.

A question involving the application of the U.S. or NMI Constitution is reviewed de novo. Commonwealth v. Peters, No. 90-026 (N.M.I. Jan. 8, 1991). It is not clear whether Bergonia raised his constitutional claim below. While ordinarily we will not consider issues raised for first time on appeal, we may do so if the issue is only one of law not relying on any factual record. See Ada v. Sablan, No. 90-006 (N.M.I. Nov. 16, 1990) (permitting

35

constitutional issue to be raised for first time on appeal).[4] In light of the importance of this issue, we will consider it.

The Due Process clause of the Fourteenth Amendment prohibits a State from depriving a person of life, liberty or property without due process of law. Since Article I, § 5, of the CNMI Constitution provides a similar prohibition, but specifically against the CNMI government, we have no reason to apply the Fourteenth Amendment to this case. We will apply Article I, § 5, using the same analysis as for the Fourteenth Amendment.

Under traditional due process analysis, a penal statute is unconstitutional if its terms are vague.

> Due process of law requires that a penal statute or ordinance state with reasonable clarity the act it proscribes and provide fixed standards for adjudging guilt, or it is void for vagueness. Statutes must give [a] person of ordinary intelligence a reasonable opportunity to know what conduct is prohibited so that he or she may choose between lawful and unlawful conduct.

Commonwealth v. Kaipat, No. 90-059, slip op. at 7, n.7 (N.M.I. Oct. 21, 1991), quoting State v. Kameenui, 753 P.2d 1250, 1251 (Haw. 1988).

"[A] clear and precise enactment may nevertheless be 'overbroad' if in its reach it prohibits constitutionally protected conduct." Grayned v. City of Rockford, 408 U.S. 104, 115, 92 S.Ct. 2294, 2302, 33 L.Ed.2d 222 (1972). In an overbreadth challenge, a

---

[4]There are two other narrow exceptions to this rule: (1) a new theory or issue arises because of a change in law while the appeal was pending and (2) plain error occurred and an injustice might otherwise result if the appellate court does not consider the issue. Ada v. Sablan, supra.

36

party must necessarily demonstrate that constitutionally protected conduct has been prohibited; absent such showing, the challenge fails.

Bergonia has not shown what constitutionally protected conduct 6 CMC § 1311 prohibits. We disagree that bathing one's child or showing affection thereto is prohibited by this statute, as is further explained below. Thus, there is no basis for his overbreadth challenge. We will, however, consider his challenge based on the vagueness doctrine.

6 CMC § 1311 was enacted by the Third Northern Marianas Commonwealth Legislature (PL 3-62 and 3-88). This statute mirrors the Model Penal Code (MPC) promulgated by the American Law Institute.[5] According to MPC § 213.4, "[s]exual contact is any touching of the sexual or other intimate parts of the person for the purpose of arousing or gratifying sexual desire." Analysis of this language sheds light upon 6 CMC § 1311:

> Section 213.4 applies to one who engages in sexual contact with a person not his spouse under a variety of enumerated circumstances. "Sexual contact" is defined to include "any touching of the sexual or other intimate parts of the person for the purpose of arousing or gratifying sexual desire." The phrase describing the requisite <u>specific intent</u> is based on similar language in a number of laws proscribing indecent liberties with children, and the idea is probably implicit in those statutes that are silent on the subject. <u>The requirement of a particular purpose to arouse or gratify sexual desire distinguishes sexual imposition</u> from ordinary assault and <u>from non-criminal touching</u>.

---

[5]<u>See</u> legislative history of PL 3-71 and 3-72, containing the bulk of the present criminal code.

1 A.L.I. Model Penal Code and Commentaries Part II § 213.4 at 400 (1980) (emphasis added; footnote omitted).

■ 6 CMC § 1311 requires proof of specific intent of contact "for the purpose of sexual arousal or gratification, aggression, degradation, or other similar purposes." Given this requirement, we hold that the statute is not unconstitutionally vague; it gives adequate notice of the prohibited conduct. See State v. Brecheisen, 677 P.2d 1074 (N.M. Ct. App. 1984) (a statute is not void for vagueness if a reasonable and practical interpretation can be given to its language).

### III.

For the foregoing reasons, the conviction is AFFIRMED.

Entered this _19th_ day of March, 1992.

_____
JOSE S. DELA CRUZ, Chief Justice

_____
RAMON G. VILLAGOMEZ, Associate Justice

_____
JESUS C. BORJA, Associate Justice