**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Carl FIELDING, Defendant–Appellant.**

No. 79–1793.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted July 1, 1980.

Decided Oct. 23, 1980.

Thomas Hillier, Seattle, Wash., argued, for defendant–appellant.

Don Currie, Asst. U.S. Atty., Seattle, Wash., for plaintiff–appellee.

Before ELY, Senior Circuit Judge, NELSON, Circuit Judge, and KARLTON,* District Judge.

KARLTON, District Judge.

## INTRODUCTION

Appellant Fielding was indicted on July 15, 1975, for (1) importation into the United States of an unspecified amount of marijuana "on or about September, 1974," 21 U.S.C. §§ 812, 952, 960(a)(1), (b)(2) (1972); 18 U.S.C. § 2 (1969); and (2) conspiracy, with four others, "beginning on or about September, 1973, and continuing through on or about September, 1974," to import marijuana with the intent to distribute in violation of 21 U.S.C. §§ 846, 953. Fielding was not arrested until April, 1979, when he was returned from Lima, Peru. After an initial trial continuance, he was tried in August, 1979, and found guilty on both counts.

Appellant raises four contentions on appeal:

1. A one month continuance violated the Speedy Trial Act;

2. United States complicity in his detention and torture by Peruvian police required dismissal of the indictment;

3. The admission of hearsay declarations of alleged coconspirators violated both the hearsay rule and the Sixth Amendment Confrontation Clause; and

4. Other items of evidence were improperly admitted.[1]

The case involved an alleged smuggling scheme that utilized the ship *Osprey* to import marijuana. Fielding allegedly handled stateside operations while other coconspirators ran the actual importation activities. The Government's case consisted primarily of the testimony of Lotz, one of the operators of the ship, Wagner[2] and Special Agent McClary. The latter two witnesses' testimony recounted declarations allegedly made to them by the Flores brothers, two alleged coconspirators. Additional facts pertinent to the decision are reported in the body of this opinion. As we explain, the judgment of conviction must be reversed because the introduction of the Flores' declarations violated both the hearsay rule and the Confrontation Clause of the Sixth Amendment to the Constitution.

## I

## SPEEDY TRIAL ACT CLAIM

■ Appellant was arraigned on May 30, 1979. On July 16, 1979, the scheduled day

---

* The Honorable Lawrence K. Karlton, United States District Judge, Eastern District of California, sitting by designation.

1. In view of our resolution of this case, it is unnecessary to discuss these remaining issues.

2. Wagner is a private citizen guilty of unrelated crimes who, in order to minimize the consequences of being caught, agreed to "make" other wrongdoers. In the parlance of the trade, he was a "twist."

of trial, the court granted the Government's request for a one month continuance and made a written finding that the continued time was excludable under the "ends of justice" exclusion of the Speedy Trial Act. 18 U.S.C. § 3161(h)(8)(A) (Supp.1980). Appellant argues that the continuance was not justified and that the delay of a trial attendant to the granting of the motion resulted in a violation of the Speedy Trial Act (by not bringing defendant to trial within the statutory period) which required the sanction of dismissal. *See* 18 U.S.C. § 3162 (Supp.1980). He does not argue that the continuance violated his constitutional right to a speedy trial, *see Barker v. Wingo*, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972), or that there was a violation of a District Plan for Prompt Disposition of Criminal Cases. *See* Fed.R.Crim.P. 50(b) *See United States v. Noll*, 600 F.2d 1123, 1126–27 (5th Cir. 1979).

Initially, the issue of the applicability of the sanction provisions is raised. Under the original Speedy Trial Act, the sanction provisions became "effective after the date of expiration of the fourth twelve–calendar–month period following July 1, 1975." Speedy Trial Act of 1974, ch. 208, § 3163(c), 88 Stat. 2080 (1974) (current version at 18 U.S.C. § 3163(c) (Supp.1980)). In other words, sanctions were not applicable until July 1, 1979. *See United States v. Cordova*, 537 F.2d 1073, 1075 n.1 (9th Cir. 1976); *United States v. Noll, supra.* The Act was amended on August 2, 1979, to provide that the sanction provisions would become "effective and apply to all cases commenced by arrest or summons, and all informations or indictments filed, on or after July 1, 1980." 18 U.S.C. § 3163(c) (1974), Speedy Trial Act Amendments of 1979, Pub.L.No. 96–43, § 6, 93 Stat. 328.

Appellant was indicted and arraigned *prior* to July 1, 1979, and, as noted, the continuance in question was granted July 16, 1979. Thus, this case comes within the "one month gap" between the applicability of sanctions under the unamended Act, and the suspension of sanctions by the new Act.

Neither party has briefed the implications of the "one month gap" and independent research has uncovered but one case analyzing its effect. *United States v. DeJesus Moran–Rojo*, 478 F.Supp. 512 (N.D.Ill.1979); *see United States v. Barboza*, 612 F.2d 999, 1000 n.1 (5th Cir. 1980). The *Moran–Rojo* court examined the legislative history of the amendment and determined that Congress intended to suspend the sanctions under the Act effective immediately upon signing of the Bill by the President. 478 F.Supp. at 513; *see* H.R.Rep.No. 390, 96th Cong., 1st Sess. (1979), *reprinted in* [1979] U.S. Code Cong. & Admin. News, pp. 805, 813–14. Defendants in that case were arrested on July 28, 1979, and the alleged Speedy Trial Act violation occurred *after* the effective date of the amendments. Relying upon the principle of statutory construction that applies procedural statutes to future proceedings in pending cases "from the point reached when the new law becomes operative," 2 C. Sands, *Statutes and Statutory Construction* § 41.04 (4th ed.1973; revision of 3d ed. of *Sutherland Statutory Construction*), the court found that the dismissal sanction did not apply, 478 F.Supp. at 513. Even assuming the correctness of the court's conclusion in that case, however, the same conclusion would not apply in the present case since the alleged violation occurred on July 16, 1979, prior to the effective date of the amendments. *See United States v. Dichne*, 612 F.2d 632, 641 (2nd Cir. 1979), *cert. denied*, 445 U.S. 928, 100 S.Ct. 1314, 63 L.Ed.2d 760 (1980).

Whether Congress could constitutionally deprive a defendant of a procedural benefit retroactively is a matter of some doubt, *see Hamm v. Rock Hill*, 379 U.S. 306, 85 S.Ct. 384, 13 L.Ed.2d 300 (1964), which we need not reach in this case. For, assuming the applicability of the dismissal sanction, the continuance did not violate the requirements of the Act.

Both parties assume that the appropriate standard of review of the district court's action is an abuse of discretion standard,

citing cases where a *defendant's* motion for a continuance was denied. *See, e.g., United States v. West*, 607 F.2d 300, 305 (9th Cir. 1979) (per curiam) ("The granting or denial of a continuance is a matter wholly within the discretion of the trial court which will not be disturbed on appeal unless that discretion is clearly abused."); *United States v. Hoyos*, 573 F.2d 1111, 1114 (9th Cir. 1978). These cases do not address the standard of review for exclusions of time under the Speedy Trial Act, but concern defense contentions that denial of a continuance deprived the defendants of an opportunity to effectively prepare for trial.

 Counsels' confusion, however, is understandable since the cases have not specifically discussed the applicable standard of review; nonetheless it appears to us that the appropriate standard is not hard to discern. In applying the exclusions under the Act, the trial judge resolves both legal and factual issues. Thus the scope of appellate review is dependent upon whether the challenged determination is legal, factual, or both. For instance, for the excludable time sections applicable in the present case, the trial judge is barred from considering certain factors (*e.g.*, a crowded docket), and required to consider other factors. *See* 18 U.S.C. § 3161(h)(8)(A) (1975).[3] Failure to consider factors which the Act requires to be considered, or consideration of factors which the Act excludes from consideration would be an action contrary to law and normally reversible error. No such claim is made in the present case. In considering the applicable factors, however, the trial judge is also required to make *factual* findings. Under subsection (h)(3)(A), the findings would concern the unavailability of a witness, due diligence, etc. Under subsection (h)(8)(A), the judge must explicitly set forth his reasons for finding that the ends of justice served by the continuance outweigh other interests protected by the Act. Under normal standards of review, such a factual finding should not be disturbed unless "clearly erroneous." *See* Fed.R.Civ.P. 52(a).

A review of the transcript reveals a lengthy and searching inquiry by the trial judge as to the propriety of the requested continuance. At the hearing, the following facts were disclosed: (1) Four years had passed since the indictment was handed down (appellant was a fugitive during this period); (2) initial attempts to locate witnesses began in early May, 1979, and the United States had trouble locating these witnesses after four years. Subpoenas were actually issued on June 19, 1979, when the Government believed it could locate the witnesses although even then the witnesses' current addresses were unknown. Material witness warrants were issued on July 11, 1979. At the time of the hearing only one of the witnesses (Lotz) had been located. That witness was represented by counsel and was hostile and unwilling to talk to the United States Attorney. The United States Attorney stated that the testimony of his informer alone was not sufficient because he was not a percipient witness.[4]

The court granted the motion for a thirty day continuance and later signed an order prepared by the United States Attorney which cited the ends of justice exclusion, 18 U.S.C. § 3161(h)(8)(A) (1975), and found: "(1) The Government, despite the exercise of due diligence, has been unable to determine the whereabouts of three essential

---

3. Appellant suggests that the standards of subsection (h)(3)(A), relating to unavailable witnesses, apply. *See infra.* That section also prescribes the factors to be considered by the trial judge and is thus susceptible to the same analysis.

4. Appellant argues that the prosecutor's statement "I think we could make our case with the testimony of Mr. Lotz" indicates that the continuance was not essential. Yet the next statement of the United States Attorney was that Mr. Lotz was "not willing to talk to me about the facts of this case." Given the fact that Lotz was a hostile witness who might rely upon the fifth amendment privilege against self-incrimination, and that the testimony of the informer wouldn't be sufficient, appellant's reliance upon this passage seems misplaced.

witnesses ... (2) Failure to grant the requested continuance would be likely to result in a miscarriage of justice. (3) Therefore, the ends of justice served by the granting of such continuance outweigh the best interests of the public and the defendant in a speedy trial...." [5]

Appellant does not argue that a section 3161(h)(8) exclusion and finding was inappropriate, but argues that the standard for such a continuance, if based upon the unavailability of a witness, must be measured by subsection (h)(3) which provides:

> (3)(A) Any period of delay resulting from the absence or unavailability of the defendant or *an essential witness.*

> (B) For purposes of subparagraph (A) of this paragraph, a defendant or an essential witness shall be considered absent when his *whereabouts are unknown* and, in addition, he is *attempting to avoid apprehension* or prosecution or his *whereabouts cannot be determined by due diligence.* For purposes of such subparagraph, a defendant or an essential witness shall be considered unavailable whenever his whereabouts are known but his *presence for trial cannot be obtained by due diligence or he resists appearing at or being returned* for trial. 18 U.S.C. § 3161(h)(3) (Supp.1980) (emphasis added).

■ Even if the standards of subsection (h)(3) apply, however, the record clearly indicates that *this* standard *was* in fact cited and relied upon at the hearing. Further-

more, under section 3162(a)(2) in any motion to dismiss, defendant bears the burden of proof, although the Government has the burden of going forward in connection with a section 3161(h)(3) exclusion. The Government came forward with a showing of necessity and unavailability; neither was rebutted by appellant. Accordingly, appellant's first argument must fall.

## II

## TOSCANINO OBJECTION

■ Appellant argues that the trial judge should have dismissed the indictment because of the alleged complicity of the United States in his torture and kidnapping in Peru. *See United States v. Toscanino,* 500 F.2d 267 (2nd Cir. 1974); *see generally* Annot., 28 A.L.R.Fed. 685 (1976). Appellant does not argue that any evidence was illegally seized; rather, he argues that the indictment should have been dismissed because of police conduct "shocking to the conscience."

*Toscanino* certainly did involve conduct shocking to the conscience. In that case, defendant had offered to prove direct complicity by United States agents in the forcible kidnapping, torture, and illegal extradition of defendant. The *Toscanino* court found that the case fit within an exception to the *Ker–Frisbie* doctrine [6] that bars an inquiry into the manner by which a defendant arrives in the court's jurisdiction. The court held that where Government conduct

---

**5.** Subsection (h)(8) excludes, in relevant part: "(8)(A) Any period of delay resulting from a continuance granted by any judge on his own motion or at the request of the defendant or his counsel or at the request of the attorney for the Government, if the judge granted such continuance on the basis of his findings that the ends of justice served by taking such action outweigh the best interest of the public and the defendant in a speedy trial. No such period of delay resulting from a continuance granted by the court in accordance with this paragraph shall be excludable under this subsection unless the court sets forth, in the record of the case, either orally or in writing, its reasons for finding that the ends of justice served by the granting of such continuance outweigh the best

interests of the public and the defendant in a speedy trial. (B) The factors, among others, which a judge shall consider in determining whether to grant a continuance under subparagraph (A) of this paragraph in any case are as follows: (i) Whether the failure to grant such a continuance in the proceeding would be likely to make a continuation of such proceeding impossible, or result in a miscarriage of justice...."

**6.** *Frisbie v. Collins,* 342 U.S. 519, 72 S.Ct. 509, 96 L.Ed. 541 (1952); *Ker v. Illinois,* 119 U.S. 436, 7 S.Ct. 225, 30 L.Ed. 421 (1886).

results in a deliberate, unnecessary, and unreasonable invasion of the accused's constitutional rights, *see Rochin v. California*, 342 U.S. 165, 72 S.Ct. 205, 96 L.Ed. 183 (1951), dismissal of the indictment is appropriate, 500 F.2d at 275.

In the Second Circuit itself, the reach of *Toscanino* has been limited. In *United States ex rel. Lujan v. Gengler*, 510 F.2d 62 (2nd Cir. 1975), *cert. denied*, 421 U.S. 1001, 95 S.Ct. 2400, 44 L.Ed.2d 668 (1975), the court reaffirmed the applicability of the *Ker–Frisbie* doctrine except in situations involving Government conduct "of a most shocking and outrageous character." *Id.* at 65. Thus, it held that even an illegal abduction did not necessarily amount to a due process violation, especially where there was no showing that the United States was involved in the original arrest and detention. In sum, "*Lujan* charges no deprivation greater than that which he would have endured through lawful extradition." *Id.* at 66. *See also United States v. Lira*, 515 F.2d 68 (2nd Cir. 1975), *cert. denied*, 423 U.S. 847, 96 S.Ct. 87, 46 L.Ed.2d 69 (1975).

The Ninth Circuit has not had occasion to apply the *Toscanino* rule. In *United States v. Lovato*, 520 F.2d 1270 (9th Cir. 1975) *cert. denied*, 423 U.S. 985, 96 S.Ct. 392, 46 L.Ed.2d 302 (1975), the court determined that no *Toscanino* showing had been made. At most, in that case, the defendant had established that he had been forcibly expelled from Mexico into the arms of the United States officers. The *Ker–Frisbie* doctrine squarely applied. *Id.* at 1271. The court explained that the *Toscanino* case, as limited by *Lujan*, provided that the *Ker–Frisbie* doctrine applied unless the defendant "makes a strong showing of grossly cruel and unusual barbarities inflicted upon him *by persons who can be characterized as paid agents of the United States.*" *Id.* (citations omitted) (emphasis added).

Appellant in the present case has made no such showing. His attempts to connect federal agents to the Peruvian mistreatment were at best ephemeral, and were contradicted by the agent in place. The district court explained that although the treatment in the Peruvian jail was outrageous "there is no showing whatsoever that the United States participated in any of that conduct, and while there is some question about whether the Embassy representatives were advised by Mr. Fielding of it while he was there, there is no showing that they failed to do what could be done, if anything, to alleviate those conditions." The district court was presented with a factual issue which, even assuming *Toscanino* applied, it resolved adversely to appellant; that resolution is not clearly erroneous.

## III

## HEARSAY AND CONFRONTATION CLAUSE CLAIMS

Fielding also appeals the admission of the testimony of David Wagner (the "twist") and Special Agent McClary insofar as it consisted of the repetition of out–of–court statements of alleged coconspirators. He argues that these statements were inadmissible hearsay because they were not "in furtherance" of the conspiracy charged as required by Fed.R.Evid. 801(d)(2)(E), and denied him his Sixth Amendment Confrontation Clause rights.

### A. *Facts*

The indictment charged Appellant Fielding, Robert Flores, Rafael Flores, Joseph Crooks, and William Nicholai with importation of marijuana on or about September, 1974. Count II charged a conspiracy among the same persons to import with intent to distribute marijuana *from* September 1973 to September 1974.

Aside from custodial witnesses, the government's case rested upon the testimony of five persons. *David* and *Steven Meyer* testified about the travels of the *Osprey,* the ship used in the importation scheme. Their testimony did not implicate the appel-

lant. *Richard Lotz* testified in detail about the importation operation. Lotz maintained that he mainly reported to and heard from Crooks and that appellant was not mentioned as a participant by the other coconspirators during the voyage. He did testify concerning two meetings which to some degree inculpate Fielding. In late 1973, at Crooks' behest Lotz attended a meeting among the other coconspirators that appellant also attended. Marijuana importation was the topic of conversation although "this was a bit of a social gathering as well." The meeting was at Crooks' home. Crooks explained that "they" were looking for someone with sailing ability ["they" were not identified]. Lotz may have talked to Fielding [but he wasn't "absolutely sure"], about remuneration for "sailing." At that time, importation was "just an idea." Lotz in fact went to work on the *Osprey* during the conspiracy. The second meeting followed Lotz's arrest. He approached Fielding seeking reimbursement for his work on the ship. Lotz did not feel appellant owed him money, but hoped he would help him. Fielding did give him some money.

The balance of the inculpating evidence came from the testimony of *David Wagner* and *Dixon McClary*. That testimony consisted almost entirely of statements made to them by the alleged coconspirators Bobby and Rafael Flores.

*David Wagner* met Fielding only once and was unsuccessful in eliciting any incriminating statements from him. Subsequently, Wagner met the Floreses in Los Angeles and, introducing himself as a big dealer, told them that he was interested "in doing the scam just like the one Carl [the appellant] was engaged in." The main source of Wagner's testimony was Bobby Flores, a twenty year old "loader" for the *Osprey.* Wagner testified that Flores tried to impress him with his ability to deliver.

At this first meeting Wagner attempted to initiate a new transaction, but was told

that there was trouble with appellant because he had not paid Bobby some $68,000 from an earlier trip which had been undertaken during the course of the conspiracy. Wagner offered his assistance, which was accepted, in collecting the debt. "They were trying to get paid, trying to find Carl ... or anything along those lines."

Q: And the purpose for which you were asked to do this was what?

A: Because ostensibly I would be buying marijuana from them in Mexico in the future and doing the trip with sailboats.

Q: And what was their purpose in asking you to help them?

A: They were having troubles with Carl and needed any corollary assistance I could give them.

The Floreses and Wagner went to Seattle and, at the airport, met Agent McClary. During this period, Wagner testified, Bobby Flores spoke generally about the conspiracy; a lot of his comments "were narrations of things that they had done in the past." Flores' statements connected appellant to the conspiracy. Bobby "didn't like the way Carl dealt, he didn't like having to be on the dole and coming up to Seattle for a few thousand dollars all the time."

*Dixon McClary*, a special agent for the Drug Enforcement Administration, met Wagner and the Floreses at the Seattle Airport. He too testified as to airport conversations. He noted that the Floreses were there "to settle a financial dispute that they had with Carl Fielding." The Floreses came with two other persons enlisted as "muscle" and were planning to use physical force against appellant. McClary and Wagner talked them out of the use of force and refused to provide them with a machete.

Neither of the Floreses testified. The record does not indicate whether Bobby Flores were available as a witness. At oral argument the Government conceded that he was available. Rafael Flores was deported

prior to trial and thus unavailable as a witness.[7]

Over objections the trial judge allowed the testimony, indicating that since the discussions with the Flores took place prior to the arrival of the *Osprey* on its last trip and related to payment for an earlier trip which was encompassed by the charged conspiracy, the statements were "in furtherance" of the conspiracy and did not violate the Confrontation Clause. The judge made no explicit findings concerning either the hearsay issue or the confrontation issue.

### B. *Coconspirator Exception*

■ Federal Rule of Evidence 801(d) provides that: "[A] statement is not hearsay if ... (2) The statement is offered against a party and is ... (E) a statement by a coconspirator of a party during the course and in furtherance of the conspiracy." As noted, appellant challenges the admission of the out–of–court declarations of the Floreses as reported by witnesses Wagner and McClary. The prosecution argued below, and argues here, that these statements were admissible solely under 801(d)(2)(E).

Relative to his hearsay objection appellant does not argue that the requisite independent proof of the conspiracy, or of appellant's connection to the conspiracy is absent. *See, e. g., United States v. Weiner*, 578 F.2d 757, 768–69 (9th Cir. 1978), *cert. denied*, 439 U.S. 981, 99 S.Ct. 981, 58 L.Ed.2d 651 (1978); *United States v. Wood*, 550 F.2d 435, 441 (9th Cir. 1976); *see United States v. King*, 552 F.2d 833, 848–49 (9th Cir. 1976), *cert. denied*, 430 U.S. 966, 97 S.Ct. 1646, 52 L.Ed.2d 357 (1977). He only argues that the "in furtherance" requirement of 801(d)(2)(E) was not satisfied. Unfortunately, appellee cites conspiracy cases indiscriminately, often relying on cases that focus on the former and not the latter issue.

This court has spoken several times in recent years on the "in furtherance" re-

quirement. In *United States v. Moore*, 522 F.2d 1068 (9th Cir. 1975), *cert. denied*, 423 U.S. 1049, 96 S.Ct. 775, 46 L.Ed.2d 637 (1976), the court emphasized that the "in furtherance" requirement remained "viable, and we believe that this is as it should be. 'The agency theory of conspiracy is at best a fiction and ought not to serve as a basis for admissibility beyond that already established.' Advisory Committee's Note to *Proposed* Fed.R.Ev[id]. 801(d)(2)(E)." *Id.* at 1077 n.5. In the *Moore* case the court rejected an 801(d)(2)(E) finding because there was nothing in the record to support a conclusion that by declarant's making of the statement, he "was seeking to induce [the witness] to deal with the conspirators or in any other way to cooperate or assist in achieving the conspirators' common objectives.... Rather, the statement was, at best, nothing more than [the declarant's] casual admission of culpability to someone he had individually decided to trust." *Id.* at 1077 (citations omitted).

More recently in *United States v. Eubanks*, 591 F.2d 513 (9th Cir. 1979) (per curiam), this court discussed the "in furtherance requirement" at length. In that case the defendant was charged with conspiracy to distribute heroin. The prosecution's star witness, Gloria Baca, testified at length as to conversations she had overheard between the conspirators and her coconspirator husband, as well as what her husband had told her concerning the conspiracy. She ultimately became a "passive" member of the conspiracy. *Id.* at 518.

In discussing the coconspirator exception, the court first noted that 801(d)(2)(E) requires a foundation to be laid to show that (1) the declaration was in furtherance of the conspiracy, (2) it was made during the pendency of the conspiracy, and (3) there is independent proof of the existence of the conspiracy and of the defendant's connection with the conspiracy. *Id.* at 519. "Suf-

---

7. Appellant does not argue that Rafael Flores' absence was purposely procured by the Government. *See California v. Green*, 339 U.S. 149, 166, 90 S.Ct. 1930, 1939, 26 L.Ed.2d 489 (1970); *Canal Zone v. P. (Pinto)*, 590 F.2d 1344, 1352 (5th Cir. 1979).

ficient evidence had to exist to support an inference that the statements were made in furtherance of the conspiracy, while the conspiracy was in existence . . . ." *Id.*

The court then delineated types of statements that are not in furtherance: Confessions or admissions of a coconspirator, "mere conversation between conspirators" or "merely narrative declarations." Such statements are not admissible since they cannot meet the condition for admissibility which is that the statements "must further the *common objectives* of the conspiracy." *Id.* at 520 (emphasis added).

The *Eubanks* court's examination of the challenged declarations demonstrates the distinction. Orders from one conspirator to the other to stop using heroin so that he could be "cleaned up" enough to distribute the drug, or the actual negotiation of a sale "furthered the objectives of the alleged conspiracy because *they set in motion transactions that were an integral part of the heroin distribution scheme.*" *Id.* (emphasis added). Accordingly, such statements were admissible. On the other hand, statements by the witness' husband concerning the activities of the conspiracy, including future plans, were not in furtherance of the conspiracy since he "was not seeking to induce [the witness] to join the conspiracy and his statement[s] did not assist the conspirators in achieving their objectives." *Id.* When the witness' husband informed her about persons he had spoken to he "was merely informing his common-law wife about his activities" and, accordingly, such statements were inadmissible as against other coconspirators. Later, the witness did assume a role in the conspiracy, but participation in the conspiracy "did not [retroactively] convert [the] statements . . . into declarations in furtherance of the conspiracy." *Id.* Therefore, these statements were admitted in error.

Under these standards, the admission of the statements in the present case was clear error. The statements can be characterized as either (1) narrative of past activities, (2)

puffing to induce Wagner to join in a new conspiracy, (3) a conspiracy to commit assault or otherwise obtain money from appellant Fielding. As defined in the indictment, the existing conspiracy was a conspiracy to import marijuana with intent to distribute it from the period of September, 1973 to September, 1974. General statements made by Flores to Wagner concerning his business relationship with Fielding in no way advanced *that* conspiracy. As Wagner admitted, Flores was trying to impress him in order to facilitate a *new* deal involving a new conspiracy that did not include appellant. Specific statements concerning payments allegedly due to Flores similarly are not statements that advance the *common objectives* of the conspiracy, i. e., objectives of the Flores *and* Fielding.

Appellee insists that payment was a part of the charged conspiracy. It is of course true that importation of marijuana is rarely an eleemosynary endeavor but is usually conducted for profit. Such an observation, however, does not aid in analysis of the facts of the present case. To the degree that Flores confided in Wagner, it was not for the purpose of insuring the profit of all the coconspirators (a common object of the conspiracy to import) but to force Fielding to pay funds allegedly due from him to Flores. Clearly such a purpose was in furtherance of the declarant Flores' purpose in joining the conspiracy, but not Fielding's. Moreover, if this activity could in some way be considered a part of the conspiracy, the statements made and the activities engaged in (including the attempt to get a machete) cannot be said to advance the common goals of the conspiracy. Statements made by Flores to obtain muscle realistically appear to be the criminal analog to a suit in equity for a dissolution of the partnership and a distribution of profits, not negotiations for extending the life of the partnership.

Appellee relies upon *United States v. Wood, supra,* at 442, to support its argument that payment is in furtherance of a conspiracy. Two observations are in order.

First, the "in furtherance" requirement was not in issue in that case which considered the question of whether there was sufficient evidence connecting defendant with the conspiracy. Second, however, unlike the present case, no pay dispute was involved. The challenged declaration was that one alleged coconspirator was the "bagman" for the conspiracy. Picking up money for the entire conspiracy is clearly in furtherance of the common objectives of the conspiracy.[8]

Thus, the court below appears to have erred. Such an error is tested by Fed.R. Crim.P. 52(a). *See United States v. Eaglin*, 571 F.2d 1069, 1081 (9th Cir. 1977), *cert. denied*, 435 U.S. 906, 98 S.Ct. 1453, 55 L.Ed.2d 497 (1978). Rule 52(a) states the "harmless error doctrine" error that does not affect substantial rights shall be disregarded. In the present case the overwhelming weight of the prejudicial testimony appears to have been erroneously admitted.

Appellant also argues that the admission of the statements violated his sixth amendment confrontation rights. Confrontation violations are tested by the *Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967), constitutional error doctrine. *See United States v. Eaglin, supra.* Thus, even if reversal under rule 52(a) is *not warranted*, it may still be required under heightened constitutional standards.

## C. *Confrontation Clause*

■ Although hearsay rules and the Confrontation Clause may protect similar values, the admissibility of a statement under a hearsay exception does not normally establish compliance with the confrontation clause.[9] *Dutton v. Evans*, 400 U.S. 74, 86, 91 S.Ct. 210, 218, 27 L.Ed.2d 213 (1970); *California v. Green*, 399 U.S. 149, 155–56, 90 S.Ct. 1930, 1933, 26 L.Ed.2d 489 (1970); *United States v. Weiner*, 578 F.2d 757, 771 (9th Cir. 1978), *cert. denied*, 439 U.S. 981, 99 S.Ct. 568, 58 L.Ed.2d 651 (1978); *United States v. Eaglin*, 571 F.2d 1069, 1080 (9th Cir. 1977), *cert. denied*, 435 U.S. 906, 98 S.Ct. 1453, 55 L.Ed.2d 497 (1978).

Appellant argues that the admission of the Flores' out-of-court declarations through the testimony of undercover agents Wagner and McClary violated his right to confrontation. The Supreme Court recently explained that a two-step analysis is required by the confrontation clause. First, the *necessity* of the hearsay declarations must be assessed; secondly, the *reliability* of the declarations must be examined. *Ohio v. Roberts*, —— U.S. ——, 100 S.Ct. 2531, 2537, 65 L.Ed.2d 597 (1980). *See also United States v. Nick*, 604 F.2d 1199, 1203 (9th Cir. 1979). As we explain, the hearsay declarations introduced below failed to meet these minimum criteria of necessity or reliability.

■ As noted, the record does not indicate whether or not Bobby Flores was available as a witness, thus the court could not have considered whether necessity compelled admission of his hearsay statements. Further, it appears that the trial judge never analyzed the reliability of the statements; instead, he apparently relied upon his conclusion that the matter came within the coconspirator exception. When appellant raised the confrontation objection, the trial judge replied "I don't have any prob-

---

**8.** The recent case of *United States v. Sandoval Villalvazo*, 620 F.2d 744 (9th Cir. 1980), is consistent with this analysis. In that case, which involved a narcotics sale, the court explained that the challenged statements "were designed to keep potential buyers from leaving the scene and were, therefore, in furtherance of the conspiracy." *Id.* at 747.

**9.** Certain hearsay exceptions, however, "rest upon such solid foundations that admission of virtually any evidence within them comports with the 'substance of the constitutional protection.' " (citation omitted) *Ohio v. Roberts*, · U.S. ——, 100 S.Ct. 2531, 2537, 65 L.Ed.2d 597 (1980). The Supreme Court has identified two such exceptions: dying declarations and cross–examined prior-trial testimony. *Id.* at · · ·· —— n.8, 100 S.Ct. at 2539 n.8. *See also Thomas v. Cardwell*, 626 F.2d 1375 (9th Cir. 1980).

lem with that. That is not so unusual at all in these cases, and the alleged conspirators may not be available before the court, but that doesn't mean their statements in course of a furtherance [sic] are not admissible." Although this Circuit has not required trial judges to make explicit findings concerning the necessity and reliability of such hearsay declarations, the cases explain that the trial court "should test the proffered declaration against these criteria. And, only after it is satisfied that these high standards have been met, should the court permit the introduction of the hearsay statement." *United States v. Nick, supra,* at 1203 n.2; *see United States v. Bell,* 573 F.2d 1040, 1044 (8th Cir. 1978). *But see United States v. Green,* 600 F.2d 154, 158 (8th Cir. 1979).

■ In the present case it is clear that the trial judge did not test the proffered statements against "these high standards." *United States v. Nick, supra.* Under these circumstances, or when the record is entirely silent concerning such essential factors as necessity or reliability, we believe that the " 'ultimate "integrity of the fact–finding process" ' " (*Ohio v. Roberts, supra,* —— U.S. at ——, 100 S.Ct. at 2537 quoting *Chambers v. Mississippi,* 410 U.S. 284, 295, 93 S.Ct. 1038, 1045, 35 L.Ed.2d 297 (1973)) is

undermined, and the requirements of the confrontation clause violated.

Moreover, it is clear that if the Flores' declarations had been tested by confrontation standards, they would not have been admitted to evidence.

### 1. *Necessity*

■ As the Supreme Court recently explained, the confrontation clause establishes a rule of necessity. "In the usual case (including cases where prior cross–examination has occurred), the prosecution must either produce or demonstrate the unavailability of the declarant whose statement it wishes to use against the defendant. . . . [¶] [W]hen a hearsay declarant is not present for cross–examination at trial, the Confrontation Clause normally requires a showing that he is unavailable." *Ohio v. Roberts, supra,* —— U.S. at ——, 100 S.Ct. at 2537.[10] This requirement is not absolute; the prosecution is not required to produce a "seemingly available witness" where the "utility of trial confrontation" is "remote." *Id.* at ——, 100 S.Ct. at 2538 n.7; *Dutton v. Evans,* 400 U.S. 74, 87, 89, 91 S.Ct. 210, 219, 27 L.Ed.2d 213 (1970) (testimony not " 'crucial' or 'devastating,' " of "peripheral significance at most" and the possibility of unreliability "wholly unreal").[11]

---

**10.** A declarant is unavailable for confrontation purposes if the record reveals that "prosecutorial authorities have made a good faith effort to obtain" the declarant's presence at trial. *Barber v. Page,* 390 U.S. 719, 725, 88 S.Ct. 1318, 1322, 20 L.Ed.2d 255 (1968); *see Ohio v. Roberts, supra; Mancusi v. Stubbs,* 408 U.S. 204, 92 S.Ct. 2308, 33 L.Ed.2d 293 (1972); *California v. Green,* 399 U.S. 149, 166, 90 S.Ct. 1930, 1939, 26 L.Ed.2d 489 (1970).

**11.** In *United States v. Snow,* 521 F.2d 730, 736 (9th Cir. 1975), *cert. denied,* 423 U.S. 1090, 96 S.Ct. 883, 47 L.Ed.2d 101 (1976), this court explained that the Government had no duty to subpoena and produce "all available witnesses before it can avail itself of the co–conspirator exception." *Id.* The court reasoned that *Dutton v. Evans, supra,* "makes it clear that the rule stated in *Barber* [*Barber v. Page, supra* n.10] is limited to a particular hearsay exception, relating to the use of a transcript of pre-

liminary hearing testimony, which is applicable only if the witness is unavailable." *Id.* The co conspirator exception itself contains no unavailability requirement. *See* Fed.R.Evid. 801(d)(2)(E). As the Supreme Court recently explained in *Ohio v. Roberts, supra,* however, the Confrontation Clause's unavailability requirement is not so limited. *Id.* —— U.S. at · · , 100 S.Ct. 2537. Moreover, we have held that even as to hearsay exceptions other than the prior testimony exception, the prosecution must show there is a "demonstrated need for the evidence." *See United States v. Nick, supra,* at 1203 (excited utterances); *see Canal Zone v. P. (Pinto),* 590 F.2d 1344, 1352 n.14 (5th Cir. 1979); *United States v. Rogers,* 549 F.2d 490, 500–01 n.12 (8th Cir. 1976), *cert. denied,* 431 U.S. 918, 97 S.Ct. 2182, 53 L.Ed.2d 229 (1977). Indeed, it appears to this panel that the necessity requirement is more compelling where coconspirator declarations are involved as opposed to prior testimony because such declarations are not tested by traditional

Although the Supreme Court has thus far refused to "map out a theory of the Confrontation Clause that would determine the validity of all ... hearsay 'exceptions,'" *California v. Green, supra,* at 162, 90 S.Ct. at 1937, *quoted in Ohio v. Roberts, supra,* —— U.S. at ——, 100 S.Ct. at 2537, and, a staggering number of Confrontation Clause cases with a variety of results have been decided by lower courts, a general rule of necessity may be distilled. Unless the "utility of trial confrontation" is remote, or the evidence is of only "peripheral significance," *see Dutton v. Evans, supra,* the prosecution must either produce the declarant, or demonstrate *on the record* that the declarant is unavailable despite the prosecution's good faith efforts to obtain the declarant's presence at trial, *Ohio v. Roberts, supra;* *see also* 4 J. Weinstein & M. Berger, *Weinstein's Evidence* ¶ 800[04] at p. 800–24 (1975); Westen, *Confrontation and Compulsory Process: A Unified Theory of Evidence for Criminal Cases,* 91 Harv.L.Rev. 567, 601 n.99 (1978).

The bulk of the hearsay declarations recounted by Wagner and McClary were statements by Bobby Flores. The record is silent as to whether or not Bobby Flores was available as a witness at trial. At oral argument, however, the appellee conceded that Bobby Flores was available but that it had simply not called him as a witness. *See Barber v. Page, supra,* at 724–25, 88 S.Ct. at 1321. The Bobby Flores declarations were central to appellee's case. Far from being

only of "peripheral significance" the statements were both "crucial" and "devastating." "The right of confrontation may not be dispensed with so lightly." *Barber v. Page, supra,* n.10 at 725, 88 S.Ct. at 1322. Because Bobby Flores was available as a witness and not produced at trial, the use of his hearsay declarations violated the Confrontation Clause.

Even if there were not an availability requirement, however, the Flores' declarations failed to bear the indicia of reliability required by the Confrontation Clause.

## 2. *Reliability*

Even if the declarant is unavailable, the prosecution must still demonstrate that the statements bear "indicia of reliability." *Mancusi v. Stubbs, supra,* n.10, 408 U.S. at 213, 92 S.Ct. at 2313. This court has long adhered to the "reliability" test of the *Dutton v. Evans* plurality. *See, e. g., United States v. Snow,* 521 F.2d 730, 734–35 (9th Cir. 1975). *Dutton* identified four factors [12] that were indicative of reliability: "(1) the declaration contained no assertion of a past fact, and consequently carried a warning to the jury against giving it undue weight; (2) the declarant had personal knowledge of the identity and role of participants in the crime; (3) the possibility that the declarant was relying upon faulty recollection was remote; and (4) the circumstances under which the statements were made did not provide reason to believe that the declarant

crucibles of reliability such as testimony under oath and cross examination, *see California v. Green, supra,* at 158, 90 S.Ct. at 1935, and even the question of whether or not the statements were ever made is in issue. At any rate, *Ohio v. Rogers* clearly overrules *Snow* to the extent that case suggests that for Confrontation Clause purposes (as contrasted with hearsay exceptions) unavailability is not a requisite. *See United States v. Weiner,* 578 F.2d 757 (9th Cir. 1978).

**12.** Additionally, *Dutton* may require exclusion of "devastating" or "crucial" evidence even if indicia of reliability are present. *See Dutton, supra,* 400 U.S. at 87, 91 S.Ct. at 219; *cited in United States v. Snow, supra,* at 735. Later Ninth Circuit cases have questioned whether

this is a separated factor or merely a summation of or alternative base to the four *Dutton* factors. *See United States v. Eaglin,* 571 F.2d 1069, 1082 n.15 (9th Cir. 1977), *cert. denied,* 435 U.S. 906, 98 S.Ct. 1453, 55 L.Ed.2d 497 (1978); *United States v. King,* 552 F.2d 833, 846 n.16 (9th Cir. 1976), *cert. denied,* 430 U.S. 966, 97 S.Ct. 1646, 52 L.Ed.2d 537 (1977), which appears to continue to apply the "crucial or devastating" test. There can be no question in the present case that the hearsay declarations were "devastating." The evidence was not merely cumulative or circumstantial; it was the only evidence which directly or unambiguously tied appellant to the conspiracy.

had misrepresented the defendant's involvement in the crime." *United States v. Snow, supra,* at 734 (*citing Dutton v. Evans, supra,* 400 U.S. at 88–89, 91 S.Ct. at 219). All four factors need not be present to indicate reliability. *See, e. g., United States v. Snow, supra* (factors 2 and 3 sufficient).[13]

The Flores' declarations fail to meet the *Dutton* requirements. First, the statements are almost entirely recitations of past events–narratives of past importation schemes and business relationships, and were in part motivated by a desire to "impress" the informer who was posing as a big dealer looking for a deal. Thus Flores had every reason to exaggerate his ability and experience. Moreover, Wagner had indicated that he wanted to follow the Fielding method of operation and thus it was important to Flores to tie his experience to the appellant. Finally, we note that the degree of Flores' association with Fielding did not suggest reliability. Although Bobby Flores was present at early meetings that planned the importation scheme, as the boat loader he was removed from appellant's alleged day–to–day operations.

Appellee argues that the declarations are reliable because they are corroborated by other events; for instance, it notes that Bobby Flores was correct in his statements about the arrival time of the *Osprey* and the details of its operation. This argument misses the mark–the existence of an importation conspiracy is not challenged, only Fielding's involvement in it. Appellee cites no corroborative evidence that supports Flores' statements concerning appellant's involvement except the fact that Flores went to Seattle with "muscle" to collect a debt. Such conduct, of course, does not provide corroboration as to complicity in an importation scheme, it only corroborates the existence of a debt. Nor is the appellee's description of Bobby Flores' relationship with appellant as merely a "rift" with no effect on the ongoing conspiracy accurate. The "rift" came at the end of the charged conspiracy and was close to involving violence. Recourse to the legal definition of the termination of a conspiracy is of limited assistance in testing the reliability of such statements.

"The question in each case must be whether a particular hearsay declaration, otherwise admissible, has such great probative value as evidence of a material fact and such a high degree of trustworthiness under all the circumstances that its reception outweighs any risk to a defendant that unreliable evidence may be received against him, the deficiencies of which he cannot adequately test because he cannot cross–examine the declarant." *United States v. Nick, supra,* at 1203. The evidence admitted was "devastating." Under the *Chapman* test, its introduction was clear constitutional error.

The judgment of the district court is therefore reversed.

---

**13.** Quite recently this court has indicated that an entirely different set of standards may appropriately be applied. In *United States v. Nick, supra,* at 1203, this court suggested that Fed.R.Evid. 803(24) might be used to test reliability for confrontation purposes. "The circumstances under which the statement was made must indicate a very high degree of reliability and trustworthiness; the statement must be offered as evidence of a material fact; the statement, although not essential for proof of the point for which it is offered, must be 'more probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts'; and the interest of justice will best be served by admission of the statement into evidence." *Id.* at 1203 (fn. omitted). For the reasons set forth *infra,* the declarations would not be admissible under these standards either.