21 F.3d 1113
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Darrel KING, Plaintiff-Appellant,
v.
Robert BORG, Defendant-Appellee.
 No. 93-15523.
 United States Court of Appeals, Ninth Circuit.
 Submitted Feb. 11, 1994.*
Decided March 10, 1994.
 
 1
 Before: ALARCON and FERNANDEZ, Circuit Judges, and HILL, District Judge.**
 
 
 2
 MEMORANDUM***
 
 
 3
 Darrel King was convicted in state court of first degree murder, possession of a firearm, and possession of a firearm by a felon. Cal.Penal Code Secs. 187, 12022.5, 12021. He subsequently filed for a writ of habeas corpus in the district court. His petition was denied. In his appeal, King alleges that unconstitutional errors at his trial compel vacation of his conviction.
 
 
 4
 We review the district court's decision to deny King's petition for habeas corpus de novo. See Adams v. Peterson, 968 F.2d 835, 843 (9th Cir.1992) (en banc). We affirm because we find no merit in any of King's contentions.
 
 
 5
 I. King's rights under the Confrontation Clause were not violated by the admission of various hearsay statements because each statement fulfilled the requirements for admission as outlined by the Supreme Court.
 
 
 6
 King contends that his Sixth Amendment Confrontation Clause rights were violated when the prosecution introduced hearsay statements under California Evidence Code Secs. 1240 (spontaneous statement), 1223 (coconspirator statement), and 1291 (former testimony). King's argument lacks merit.
 
 A. The Spontaneous Statement
 
 7
 During trial, Sergeant Kenneth Davis testified that Mrs. Williams told him that she saw the driver of a white Corvette shoot Butler, and that the letters on its license plate were TTY. The state trial judge admitted this testimony pursuant to California's spontaneous statement exception to the hearsay rule, California Evidence Code Sec. 1240.
 
 
 8
 When a hearsay declarant is not present in court for cross examination, the Confrontation Clause requires a showing that the hearsay statement is reliable. Ohio v. Roberts, 448 U.S. 56, 66 (1980).[1] The requisite reliability of Williams' statement can be inferred from the fact that it fulfilled the elements of California's spontaneous statement exception to the hearsay rule, a firmly rooted exception. See White v. Illinois, 112 S.Ct. 736, 742 n. 8 (1992).
 
 
 9
 King cites United States v. Fielding, 630 F.2d 1357 (9th Cir.1980), op. withdrawn, 645 F.2d 719 (9th Cir.1981), for the proposition that Dutton v. Evans, 400 U.S. 74 (1970), "may require exclusion of 'devastating' or 'crucial' evidence even if indicia of reliability are present" (quoting Fielding, 630 F.2d at 1368 n. 12). He argues that Williams' statement was of this nature.
 
 
 10
 In Dutton, the Supreme Court held that the admission of a coconspirator's hearsay statements did not violate the defendant's confrontation rights because the statements bore indicia of reliability. Dutton, 400 U.S. at 88-89. In the course of its decision, the Court also noted that the hearsay testimony was not "crucial" or "devastating" evidence, that it had "peripheral significance at most." Id. at 87. The language King cites from Fielding suggests that Dutton requires that hearsay testimony be both reliable and relatively insignificant to be admitted in compliance with the Sixth Amendment.
 
 
 11
 However, the Fielding opinion relied upon by King was withdrawn and replaced with an opinion which no longer contains the quoted language. United States v. Fielding, 645 F.2d 719 (9th Cir.1981). Furthermore, none of the other cases cited by King support his interpretation of Dutton. Our independent research has not uncovered any authority which turns on King's interpretation of Dutton. Rather, this circuit has taken the view that the "unhappily worded discussion" in Dutton merely restates the harmless error rule and provides an alternative basis for upholding convictions. United States v. Eaglin, 571 F.2d 1069, 1082 n. 15 (9th Cir.1977), cert. denied, 435 U.S. 906 (1978); see also United States v. Bernard S., 795 F.2d 749, 754 n. 6 (9th Cir.1986); United States v. Weiner, 578 F.2d 757, 772 (9th Cir.), cert. denied, 439 U.S. 981 (1978); United States v. King, 552 F.2d 833, 846 n. 16 (9th Cir.1976), cert. denied, 430 U.S. 966 (1977). Because Williams' statements were reliable by virtue of being spontaneous, the district court did not err in admitting them.
 
 B. The Coconspirator Statement
 
 12
 Paris Holmes testified that Gary Davis told him he had pointed out Butler to King, who then shot Butler. The state trial judge admitted Holmes' testimony under California's coconspirator exception to the hearsay rule, California Evidence Code Sec. 1223.
 
 
 13
 King contends that this hearsay testimony should have been excluded because it was unreliable and "devastating." The Supreme Court, however, has indicated that coconspirator statements are inherently reliable. United States v. Inadi, 475 U.S. 387, 394-96 (1986). In holding that the Confrontation Clause does not require that the unavailability of the declarant be demonstrated to admit coconspirator hearsay statements, the Inadi Court observed that, because coconspirator statements "are made while the conspiracy is in progress, such statements provide evidence of the conspiracy's context that cannot be replicated, even if the declarant testifies to the same matters in court." Id. at 395.
 
 
 14
 Nevertheless, King argues that this presumptive reliability "does not lead inexorably to the conclusion that the purported coconspirator statements admitted at [his] trial ... were sufficiently reliable." He thereafter lists a number of facts Holmes did not remember regarding how King learned about the robbery of his runners. King does not explain how this relates to the issue of the reliability of Davis' coconspirator statements. Instead, he suggests that Holmes' inability to remember made him a poor subject for cross examination. Although this may have been true, it does not affect the admissibility of Davis' statements; it merely made Holmes' credibility as a witness ripe for attack.
 
 
 15
 Because these coconspirator hearsay statements were reliable and admission of them was therefore not error, we need not address King's claim that the evidence was "devastating."
 
 C. The Former Testimony
 
 16
 The state trial judge permitted the prosecutor to introduce the prior testimony of Carl Gayden and Wayne Brown pursuant to California Evidence Code Sec. 1291(a)(2) (Former testimony is admissible if "[t]he party against whom the former testimony is offered was a party to the action or proceeding in which the testimony was given and had the right and opportunity to cross-examine the declarant with an interest and motive similar to that which he has at the hearing."). Prior testimony is admissible under the Sixth Amendment upon proof that the declarant is unavailable and the earlier testimony is reliable. Ohio v. Roberts, 448 U.S. 56, 66 (1980). Gayden's and Brown's assertion of their Fifth Amendment rights rendered them unavailable. See California v. Green, 399 U.S. 149, 168 n. 17 (1970); see also Cal.Evid.Code Sec. 240(a)(1); Fed.R.Evid. Sec. 804(a)(1). Further, the prior testimony bore indicia of reliability by virtue of the fact that it was elicited at a proceeding in which King was represented by counsel who had the opportunity to cross examine the witnesses. See Roberts, 448 U.S. at 73 n. 12; Thomas v. Cardwell, 626 F.2d 1375, 1385-86 (9th Cir.1980), cert. denied, 449 U.S. 1089 (1981). As in Thomas, "there was substantial compliance with the confrontation requirement and sufficient indicia of reliability so that the jury in [King's] second trial was afforded a satisfactory basis for evaluating the truthfulness of [Gayden's and Brown's] prior testimony." Thomas, 626 F.2d at 1385-86 (internal quotation omitted). Admission of this hearsay evidence did not violate King's Sixth Amendment rights.
 
 
 17
 II. King was not denied due process because the prosecutor did not present false testimony and any improper remarks did not so infect the trial as to render it fundamentally unfair.
 
 
 18
 King contends that the prosecutor knowingly presented false testimony and made improper comments in his opening argument, depriving King of a fair trial. We disagree.
 
 
 19
 King argues that the prosecutor introduced prior testimony of Officer Wayne Brown, knowing that it had been fabricated. King bases this argument on the fact that the prosecutor attempted to impeach Brown's credibility after first introducing statements made by Brown. King is confused concerning the state of the record.
 
 
 20
 In order to establish a chain of custody for the drugs found at King's home during a search in August 1979, the prosecution introduced a portion of Brown's testimony from King's first trial. King's attorney then offered additional prior testimony by Brown in an attempt to impeach the testimony of Inspector Hendrix. In response, the prosecution sought to reinforce Inspector Hendrix's credibility by presenting evidence that Brown had a motive to fabricate that portion of his previous testimony. The court denied the request. The prosecutor did not seek to discredit Brown's testimony offered as evidence by the State. The prosecutor attempted to impeach that portion of Brown's testimony introduced by King's counsel.
 
 
 21
 King also argues that the prosecutor made improper comments during his opening argument. King first asserts that the prosecutor's comment that people on the street had recognized King "as the driver and the shooter," and that although they had talked to the police, many of them had "disappeared or left the state" since then. Following King's objection, the prosecutor said "I will prove it, Your Honor." King claims that the prosecutor intentionally misled the jury in his opening argument because during the trial the prosecution did not prove or attempt to prove that there were witnesses who had identified King and who had subsequently disappeared. King also objects to the prosecutor's characterization of Gary Davis' post-arrest statement as a "confession."
 
 
 22
 When reviewing the propriety of a prosecutor's remarks, "[t]he relevant question is whether the prosecutors' comments so infected the trial with unfairness as to make the resulting conviction a denial of due process." Darden v. Wainwright, 477 U.S. 168, 181 (1986) (internal quotation omitted). In Darden, the Supreme Court emphasized that "the appropriate standard of review for such a claim on a writ of habeas corpus is the narrow one of due process, and not the broad exercise of supervisory power." Id. (internal quotation omitted). Thus, the prosecutor's comments in this case only warrant habeas relief if they rendered King's trial fundamentally unfair.
 
 
 23
 In Frazier v. Cupp, 394 U.S. 731 (1969), the Supreme Court ruled on the implications of a prosecutor's opening reference to anticipated, but never presented, testimony of a witness jointly indicted with the defendant. The Court held that when the anticipated but unproduced evidence "is not touted to the jury as a crucial part of the prosecution's case, it is hard for us to imagine that the minds of the jurors would be so influenced by such incidental statements ... that they would not appraise the evidence objectively and dispassionately." Id. at 736 (internal quotation omitted). The Court concluded that the limiting instructions given the jury explaining that the prosecutor's opening remarks should not be considered evidence were sufficient to protect the defendant's constitutional rights. Id. at 734-35.
 
 
 24
 In this matter, the prosecutor did not tout or emphasize the proposed evidence in question. It was only mentioned in his opening statement. Moreover, the statement was not "crucial" to the State's case. The prosecution presented other evidence directed at identifying King as Butler's killer. Finally, the trial court admonished the jury prior to the prosecutor's statement, in the final instructions, and again when the instructions were reread at the jury's request, that statements of counsel do not constitute evidence. King contends, however, that the prosecutor acted in bad faith because he "knew all along" that one of the witnesses, Gary Davis, would reject an offer of immunity and refuse to testify and that this warrants relief. However, King's contention is based on speculation and is not supported by the record. The remarks regarding the unproduced evidence did nto render King's trial fundamentally unfair.
 
 
 25
 During his opening statement, the prosecutor also made reference to the statement Gary Davis made upon his arrest for involvement in Butler's killing. The prosecutor said: "Gary Davis was arrested by the police. He is presently standing--facing trial. And when he was arrested by the police, he completely confessed, said, 'Yes, I was there.' " King objects to the use of the word "confessed" to characterize what was apparently only admission to being present during the crime, not an acknowledgment of guilt.
 
 
 26
 In determining whether such an error by the prosecutor denies a defendant a fair trial, the Supreme Court considers such factors as the consistency with which the conduct occurred during trial, the introduction of "specific misleading evidence important to the prosecutor's case in chief," and curative instructions provided the jury by the trial judge. Donnelly v. DeChristoforo, 416 U.S. 637, 646-47 (1974). In Donnelly, after a codefendant changed his plea to guilty near the end of the trial, the prosecutor suggested in his closing argument that the remaining defendant would be pleased with any verdict less than first degree murder. Id. at 640. Although finding the remarks improper, the Court distinguished the prosecutor's actions from cases in which the State consistently and repeatedly misrepresented dramatic evidence. Id. at 646 (citing Miller v. Pate, 386 U.S. 1 (1967), in which the prosecutor repeatedly described a pair of undershorts which allegedly belonged to the defendant as stained with blood when the prosecutor knew the stains were from paint). The Donnelly Court held that isolated passages of an argument, which the jury had been instructed not to treat as evidence, did not so influence the trial as to make it fundamentally unfair. Id. at 643.
 
 
 27
 The prosecutor in this case only misspoke once with regard to Davis' statement. He did not repeat the mischaracterization or stress it as critical to the State's case. Furthermore, the significance of the word "confessed" was diminished by the comments which accompanied it suggesting that the substance of Davis' statement was merely an admission of presence, not guilt. In addition, the court advised the jury several times that remarks of counsel should not be considered evidence. Thus, although inaccurate, the prosecutor's characterization of Davis' statement as a confession did not so infect the trial as to deny King due process.
 
 
 28
 III. King was not denied due process when the trial judge denied the motions to dismiss one juror and question another because the record demonstrates he did not abuse his discretion in so doing.
 
 
 29
 King contends that he was denied an opportunity to establish the prejudice and bias of two jurors, Mary Heglar and Larose Watts, and was therefore denied due process.
 
 
 30
 Due process does not require "a new trial every time a juror has been placed in a potentially compromising situation," but rather "a jury capable and willing to decide the case solely on the evidence before it, and a trial judge ever watchful to prevent prejudicial occurrences when they happen." Smith v. Phillips, 455 U.S. 209, 217 (1982). When a juror's impartiality has been called into question, the court may, in its discretion, hold an evidentiary hearing at which both parties participate. See id.; United States v. Hendrix, 549 F.2d 1225, 1227 (9th Cir.) (en banc), cert. denied, 434 U.S. 818 (1977). Any decision in that regard may not be reversed absent an abuse of discretion. Hendrix, 549 F.2d at 1229. Moreover, a "state court's conclusion that a juror can be impartial may be set aside only if it lacks fair support in the record." Bayramoglu v. Estelle, 806 F.2d 880, 887 (9th Cir.1986) (internal quotation omitted).
 
 
 31
 The record in this case demonstrates that the trial court did not abuse its discretion in denying the motion to excuse Heglar or in declining to question Watts as to whether she had received a threatening phone call. The court observed both jurors throughout the trial and spoke individually with them. The judge deduced from these conversations that Heglar was sincere, honest, and open minded, and that Watts would have come to him had she received a threatening phone call. The court's decisions regarding these jurors did not deprive King due process.
 
 
 32
 IV. King's right to due process was not violated by the admission of evidence reflecting his drug-dealing activities and possession of counterfeit money because the evidence did not render King's trial fundamentally unfair.
 
 
 33
 King contends that the admission of evidence regarding his drug-dealing activities was "overkill" and denied him his due process right to a fair trial. King also asserts that the admission of evidence regarding the counterfeit nature of the money confiscated from the back seat of his car unfairly prejudiced him and denied him a fair trial.
 
 
 34
 The prosecution may properly introduce evidence of other crimes in order to show motive or intent. United States v. Marshall, 526 F.2d 1349, 1360 (9th Cir.1975), cert. denied, 426 U.S. 923 (1976). The evidence of King's drug operation was not admitted in this case to demonstrate that he had a poor character, but only to show his motive and intent, and the jury was instructed accordingly.[2] The prosecution offered testimony regarding the confiscated counterfeit money as evidence of King's guilty conscience and attempted flight to avoid retrial.
 
 
 35
 To warrant federal habeas corpus relief, the admission of this evidence must have rendered King's trial fundamentally unfair. Colley v. Sumner, 784 F.2d 984, 990 (9th Cir.), cert. denied, 479 U.S. 839 (1986). The prosecutor presented considerable evidence regarding King's drug-dealing activities to the jury. Far from being marginally related to the case, this evidence supplied the motive for committing murder. This evidence was undoubtedly prejudicial to King, however, it was not unfairly prejudicial, especially given the fact that the jury was instructed on the limited manner in which it could consider the evidence. See Gordon v. Duran, 895 F.2d 610, 613 (9th Cir.1990).
 
 
 36
 With regard to the counterfeit money seized from King's car, the amount of money confiscated was consistent with the theory that King was a wealthy man fleeing from retrial, particularly since it was coupled with evidence regarding the substituted license plate, the amount of clothes and luggage, and King's false identification. The counterfeit nature of the money was not particularly relevant to the motive for killing Butler. However, given all of the other far more incriminating evidence introduced in this case, we do not believe that the admission of this evidence rendered King's trial fundamentally unfair.
 
 
 37
 V. King was not denied due process by the prosecutor's failure to procure the presence of an out-of-court declarant because King did not demonstrate that the testimony of the witness would have been favorable to him or that the police acted in bad faith by failing to maintain contact with the witness.
 
 
 38
 King claims that the prosecutor had an obligation to secure Williams as a material witness before using her spontaneous statement against him. Citing United States v. Mendez-Rodriguez, 450 F.2d 1, 4-5 (9th Cir.1971), and United States v. Tsutagawa, 500 F.2d 420, 423 (9th Cir.1974), King argues that principles of "basic fairness" preclude the State from deciding which witnesses will be available to the accused for cross examination.
 
 
 39
 Mendez-Rodriguez and Tsutagawa do not support King's argument. In those cases, we held that the Government violated the defendants' constitutional rights when it made unavailable for interview potentially favorable witnesses to the defense. In this case, there is no evidence to suggest Williams would have been a favorable defense witness; she was a witness for the prosecution. See United States v. Valenzuela-Bernal, 458 U.S. 858, 872-73 (1982) (in order to demonstrate a due process violation on the basis that potential witnesses were deported, the defendant must offer some explanation of how their testimony would have been favorable and material). Furthermore, King offers no showing that the State deliberately lost contact with Williams in order to deprive King of an opportunity to cross examine her. Absent such a showing, King has failed to demonstrate his right to due process was violated. See Arizona v. Youngblood, 488 U.S. 51, 58-59 (1988).
 
 
 40
 VI. King was not denied effective assistance of counsel at trial. He did not demonstrate that the failure of his attorney to object to the admission of a particular piece of evidence or to request specific jury instructions was professionally unreasonable and prejudiced his defense.
 
 
 41
 King contends that he was denied effective assistance of counsel at trial. He bases his claim on the fact that his attorney did not object to the admission of Williams' spontaneous statement for failure to prove unavailability and that his attorney did not request an instruction requiring jurors to find that a conspiracy existed.
 
 
 42
 A defendant claiming that his attorney did not provide competent assistance must demonstrate (1) that his counsel's performance was deficient and (2) that the deficiency prejudiced the defense. Strickland v. Washington, 466 U.S. 668, 687 (1984). This standard is "highly deferential" and requires an evaluation from the perspective of counsel at the time of the trial. Id. at 689.
 
 
 43
 King's claim that his attorney should have objected to the admission of Williams' spontaneous statement because the prosecutor did not prove unavailability does not meet either prong of the Strickland test. At the time of the trial, it was unclear whether a prosecutor was required to demonstrate unavailability before introducing a spontaneous statement under an exception to the hearsay rule.[3] Thus, an objection may have been sustained. However, an attorney's failure to make a proper objection to the admission of purportedly inadmissible testimony does not necessarily demonstrate ineffective assistance. See Morris v. California, 966 F.2d 448, 456 (9th Cir.), cert. denied, 113 S.Ct. 96 (1992). A defendant "must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." Strickland, 466 U.S. at 689 (internal quotation omitted). We need not determine the actual reason that the attorney chose not to object, so long as the failure to object was not professionally unreasonable. See United States v. Molina, 934 F.2d 1440, 1448 (9th Cir.1991).
 
 
 44
 In Molina, we held that defense counsel's failure to object to a prosecutor's reference to evidence not produced at trial did not amount to ineffective assistance of counsel. Id. at 1447-48. The prosecutor had commented in closing argument that the defendant could not call ten or twelve surveilling agents liars, when, in fact, the State had only presented three agents as witnesses. Id. at 1446. Although finding counsel's passivity troubling, we noted that attorneys may choose not to object for a number of tactical reasons, including a concern that the jury may perceive them as desperate or hyper-technical. Id. at 1448.
 
 
 45
 In the present case, because King's attorney had already objected to the testimony on other grounds, he may well have been concerned about the jury's response to repeated objections to the same testimony. Moreover, it is not clear whether an "unavailability" objection would have been sustained. Considering the possible tactical reasons underlying the failure to object and the objection's questionable potential success, counsel's decision did not fall outside the range of reasonable assistance. Further, King was not prejudiced by that decision. See Lockhart v. Fretwell, 113 S.Ct. 838 (1993) (holding that when a defense attorney fails to make an objection which might have been sustained at the time, but which is later found to be improper, "prejudice" within the meaning of Strickland has not been demonstrated).
 
 
 46
 King's claim that his attorney should have requested California Jury Instructions, Criminal (CALJIC) No. 6.24 after the court admitted Holmes' testimony under the coconspirator exception also fails to meet either prong of Strickland. Holmes testified that Gary Davis had told him that he pointed out Butler to King, who then shot Butler. The court admitted Davis' hearsay statement, finding that Davis and King were coconspirators. King claims that his attorney was incompetent for failing to request CALJIC No. 6.24. This instruction directs the jury that they must find that a conspiracy existed, that the hearsay declarant was part of the conspiracy, and that the hearsay statement was made in furtherance of the conspiracy. The instruction may be given at the discretion of the court, but must be given if requested by the defense. Cal.Evid.Code Sec. 403(c)(1).
 
 
 47
 If defense counsel had asked for the instruction, the jury would have heard detailed instructions defining conspiracy. See People v. Earnest, 53 Cal.App.3d 734, 744-45 (1975) (The definition of "conspiracy," as used in California Evidence Code section 1223, "contains elements not generally understood by the lay public.... [It] has a technical legal meaning which requires the court to define it sua sponte."). In order to make their determination, the jury would have had to consider whether the conspiracy was to distribute drugs or to commit murder, as well as other incriminating evidence. King's attorney may have determined that it was not in King's best interests for the jury to be exposed to such evidence. We are not in a position to second guess counsel's trial strategy, especially since the decision to forego the instruction was not unreasonable under the circumstances.
 
 
 48
 In addition, counsel's failure to request the instruction did not prejudice King's defense. The trial court properly found that Davis' hearsay statement met the requirements of the coconspirator exception. The substantial evidence that a conspiracy existed, that Davis was a part of the conspiracy, and that Davis' statement was made in furtherance of the conspiracy makes it highly unlikely that the jury would have reached a different determination. Therefore, King did not suffer any prejudice as a result of his attorney's decision not to request the instruction.
 
 CONCLUSION
 
 49
 Because none of King's contentions are meritorious, the district court's denial of habeas corpus relief is AFFIRMED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3
 
 
 **
 Honorable Irving Hill, Senior United States District Judge for the Central District of California, sitting my designation
 
 
 ***
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3
 
 
 [1]
 Unavailability of the declarant must also be demonstrated in some cases, see Roberts, 448 U.S. at 66 (former testimony), but not when the hearsay falls within a spontaneous statement exception to the hearsay rule. White v. Illinois, 112 S.Ct. 736, 741-43 (1992)
 
 
 [2]
 The trial court instructed the jury that evidence of other crimes "if believed, was not received and may not be considered ... to prove that [King] is a person of bad character or that he has a disposition to commit crimes. Such evidence was received and may be considered ... only for the limited purpose of determining if it tends to show a motive for the commission of the crime charged."
 
 
 [3]
 The Supreme Court subsequently resolved the issue in White v. Illinois, 112 S.Ct. 736 (1992), ruling that unavailability of a spontaneous statement hearsay declarant need not be demonstrated before introducing the statement into evidence