NOTICE: NOT FOR PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION DOES NOT CREATE
LEGAL PRECEDENT AND MAY NOT BE CITED EXCEPT AS AUTHORIZED.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

STATE OF ARIZONA, *Appellee*,

*v.*

REUBEN JOSEPH JUAREZ, *Appellant*.

No. 1 CA-CR 16-0127
FILED 12-20-2016

Appeal from the Superior Court in Maricopa County
No.  CR 2013-450279-001
The Honorable George H. Foster, Jr., Judge

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Michael T. O'Toole
*Counsel for Appellee*

Maricopa County Public Defender's Office, Phoenix
By Joel M. Glynn
*Counsel for Appellant*

---

## MEMORANDUM DECISION

Judge Margaret H. Downie delivered the decision of the Court, in which Acting Presiding Judge Samuel A. Thumma and Judge Jennifer Campbell[1] joined.

---

**D O W N I E**, Judge:

**¶1**        Reuben Joseph Juarez appeals his conviction and sentence for unlawful flight from law enforcement vehicle. For the following reasons, we affirm.

## FACTS AND PROCEDURAL HISTORY

**¶2**        Goodyear Police Officer Seymore followed a vehicle that committed traffic infractions.  He ran the license plate of the vehicle and learned that it was registered to Juarez.  Officer Seymore activated the patrol car's lights and sirens but discontinued his pursuit "for policy reasons" when the vehicle failed to stop.  The officer positioned himself in an area he believed the car might pass, and when it did so, he again followed until the driver ran a red light and it became "too dangerous" to continue the pursuit.  Although Officer Seymore did not make personal contact with the driver, he identified him as Juarez based on an Arizona Motor Vehicle Department ("MVD") photograph.

**¶3**        Juarez was charged with one count of unlawful flight from law enforcement vehicle, a class 5 felony.  A jury found him guilty of the charged offense.  After the superior court suspended his sentence, placed him on three years of standard probation, including 30 days in jail, Juarez timely appealed.  We have jurisdiction pursuant to Arizona Revised Statutes ("A.R.S.") sections 13-4031 and -4033.

---

[1]        The Honorable Jennifer Campbell, Judge of the Arizona Superior Court, has been authorized to sit in this matter pursuant to Article VI, Section 3 of the Arizona Constitution.

## DISCUSSION

**¶4**        Juarez first contends he is entitled to a new trial because Officer Seymore testified at trial that he reviewed a database that included MVD photos and booking photos. The following exchange occurred during the officer's direct examination:

> Q. . . . You said you were able to ID the driver. And by doing that were you able to pull up an MVD photo of the defendant to do that?
>
> A. Yes.
>
> Q. And what did that – what person did that come back to?
>
> A. So like I said earlier, I ran the plate, came back the registered owner to a Rueben Juarez. The gentleman I saw, which I described in my report and over the radio I believe, was Hispanic male, short or no hair wearing a white T-shirt.
>
> After we ended everything, I pulled up LE Web, which is our access to MVD photos and booking photos as well. Booking photos are photos for people that have been charged with a crime and booked into the Maricopa County jail. On there I was able to see a photo of Mr. Juarez which matched the driver of the vehicle.

**¶5**        Because Juarez did not object to Officer Seymore's testimony, we review for fundamental error only. *See State v. Henderson*, 210 Ariz. 561, 567, ¶ 19 (2005). "To prevail under this standard of review, a defendant must establish both that fundamental error exists and that the error in his case caused him prejudice." *Id*. at ¶ 20. Fundamental error is "error going to the foundation of the case, error that takes from the defendant a right essential to his defense, and error of such magnitude that the defendant could not possibly have received a fair trial." *Id*. at ¶ 19.

**¶6**        Officer Seymore testified unequivocally that he identified Juarez from an MVD photo. Although he explained that the database he used includes both MVD photos and booking photos, he did not state that Juarez has a booking photo and did not state or imply that Juarez has a criminal history. Similarly, in his opening statement and closing argument, the prosecutor told jurors that Juarez had been identified from an MVD photo, stating:

- Officer Seymore pulls up the registration for that car, pulls up a photograph of the defendant and he identifies . . . the registered owner of the car as the defendant, as the person he saw driving the car on that day. . . . The car was registered to the defendant, pulled up the defendant's photo with MVD and saw that the defendant was the one that had chosen to flee from him.

- You heard Officer Seymore talk about how he pulled up the photos -- driver's license photo for that person that it was connected to. The person's name, the registered owner was a Reuben Juarez and he identified Reuben Juarez as the driver of the car.

- Officer Seymore pulled up the MVD photo of the registered owner of the car and based off of that photo, which only goes to one person . . . he identified Reuben Juarez as the driver of the car.

¶7        The cases Juarez relies on are distinguishable, involving trial testimony or evidence about a defendant's criminal history. *See, e.g.*, *State v. Jacobs*, 94 Ariz. 211, 212 (1963) (officer testified that a "mug shot" of the defendant was shown to witnesses); *State v. Kellington*, 93 Ariz. 396, 397 (1963) (trial testimony that the defendant was an "ex-convict"). Here, Officer Seymore's fleeting reference to a database that includes both MVD photos and booking photos, while testifying he relied on an MVD photo, did not constitute fundamental error resulting in prejudice.

¶8        Juarez next contends he is entitled to a new trial due to prosecutorial misconduct. "To prevail on a claim of prosecutorial misconduct, a defendant must demonstrate that the prosecutor's misconduct so infected the trial with unfairness as to make the resulting conviction a denial of due process." *State v. Morris*, 215 Ariz. 324, 335, ¶ 46 (2007).

¶9        Juarez first argues the prosecutor engaged in misconduct by arguing that his brother, B.J., was a "lying felon who is biased for his brother." Before cross-examining B.J., the prosecutor asked for and received the trial court's permission to impeach B.J. because, when asked on direct examination how long he had lived with Juarez, B.J. responded, "five years," despite being in prison for some of that time. Juarez did not object to this request. During cross-examination, again without objection,

the prosecutor unsuccessfully attempted to get B.J. to concede he had lied. On redirect, defense counsel clarified that B.J. had lived with Juarez both before and after B.J.'s time in prison

**¶10**　　　　"The criteria for determining whether remarks by a prosecutor require reversal are (1) whether the prosecutor's actions called jurors' attention to matters the jury was not justified in considering in determining its verdict and (2) the probability that the jurors were in fact influenced by the remarks." *State v. Armstrong*, 208 Ariz. 345, 357, ¶ 61 (2004). Here, B.J.'s felony record was elicited by defense counsel during direct examination. And the superior court could reasonably conclude that B.J.'s avowal he had lived with Juarez for five years opened the door to cross-examination regarding the accuracy of that claim. *Cf. Pool v. Superior Court*, 139 Ariz. 98, 103 (1984) ("[W]here one party injects improper or irrelevant evidence or argument, the 'door is open,' and the other party may have a right to retaliate by responding with comments or evidence on the same subject."). The extent of cross-examination to be permitted is within the discretion of the trial judge and will not be disturbed on appeal unless that discretion has clearly been abused. *State v. Zuck,* 134 Ariz. 509, 513 (1982). No such abuse is present here.

**¶11**　　　　The next alleged act of misconduct relates to the State's closing argument references to Buffalo Wild Wings — an establishment near the site of the initial traffic violation. The prosecutor argued B.J. had testified Juarez was "a big football fan" and continued: the "State submits the defendant was at Buffalo Wild Wings watching the game." But even assuming this argument was neither a reasonable inference from the evidence nor within jurors' common knowledge, Juarez has not established that the remarks "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Morris*, 215 Ariz. at 335, ¶ 46; *see also State v. Hughes*, 193 Ariz. 72, 79, ¶ 26 (1998) (to require reversal, prosecutorial misconduct must be so pronounced and persistent that it permeated the entire trial). The same is true of Juarez's challenge to the prosecutor's closing argument references to a "cartoon dog barking distractions" — suggesting the defense was focusing on irrelevant matters. *See State v. West*, 176 Ariz. 432, 446 (1993) (prosecutor's closing argument that characterized defense questions as a "ploy," "outrageous," and "improper" was "well within the wide latitude afforded" during closing argument) *overruled on other grounds by State v. Rodriguez*, 192 Ariz. 58, 64 n. 7, ¶ 30 (1998); *State v. Amaya-Ruiz*, 166 Ariz. 152, 171 (1990) (prosecutor's characterization of defense as a "smoke screen" not improper).

## CONCLUSION

¶12    For the foregoing reasons, we affirm Juarez's conviction and sentence.



AMY M. WOOD • Clerk of the Court
FILED:  AA